CLERK, U.S. DISTRICT COURT

07/30/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ IGU _____ DEPUTY

David Stebbins (pro se Plaintiff)     123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947                        acerthorn@yahoo.com

## UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                          PLAINTIFF

VS.                          Case 8:24-cv-01486-JVS-KES

JARROD JONES                                             DEFENDANTS

## **MOTION FOR LIQUIDATED DAMAGES**

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion for Liquidated Damaegs in the above-styled action.

### **Facts**

1.      The following facts are necessary to understand this motion:

### Mediation and Settlement Agreement

2.      On Thursday, July 25, 2024, Jarrod Jones and I had a mediation with Magistrate Judge Kewalramani.

3.      During this mediation, Jones made several declarations regarding his financial status, including but not limited to the following:

(a)     He had the same SSI benefits as me, which cannot be garnished.

(b)     He is no more financially well off than me.

(c)     He too is chronically unemployed, just like me.

(d)     Although his Spokeo report says he has income between $150000 and $175,000, and that he "has investments," he alleges those reports are false because there is another man in Everette, Washington also named Jarrod Jones. He then speculates that Spoke might have confused the two, and attributed assets & income to one when they should have attributed them to the other.

4.      Because of all of these, he argued, he literally *couldn't* pay very much, even if he wanted to. He used this as a bargaining chip to drive down the value of the settlement.

5.      Prior to this mediation, Jarrod Joens had been caught telling multiple bald-faced lies

about his financial situation and whether or not his handling of the case was done in good faith. See Dkt. 43, 63, & 69 for just a few examples of when I smelled a rat. As a result, I was highly suspicious that Jones was likewise lying here.

6.      To protect myself from this very real possibility, I demanded a provision in the settlement where I reserved the right to investigate his financial status (the "Investigation Clause"), and he agreed to reasonably cooper-ate with me regarding that investigation (the "Cooperation Clause"). If, upon investigation, in turned out that Jones was materially lying about his financial status and, in fact, could afford to pay me more than what we actually agreed to, he agreed to pay me liquidated damages of $10,000 (the "Liquidated Damages Clause").

7.      Judge Kewalramani suggested a non-exclusive example whereby, if Jones had assets totalling more than $6,000 in value, except for his car, he would automatically be subject to the liquidated damages amount, but that was not meant to be the sole exclusive means of triggering the liquidated damages. After all, it was also Judge Kewalramani's suggestion that I look at Jones' tax returns. Assets which the defendant owns are not going to be referenced in his tax returns. So the fact that Judge Kewalramani made that suggestion clearly showed that he (and, by extension, the parties) clearly understood income to be just as important to assets when it comes to the underlying investigation. The words "assets" and "net worth" were clearly meant to be short-hand for Jones' overall financial solvency. Otherwise, what's the point of him mentioning Jones' tax returns?

8.      Jones agreed to the provisions demanded in ¶¶ 6-7 above without any haggling.

9.      Judge Kewalramania can be a witness to the events listed in ¶¶ 3-8 if Jones tries to dispute that this is what happened.

10.     In addition, back when this case was filed in the Northern District of California, he filed an in forma pauperis application, where he alleged much of the same financial status that is mentioned in ¶ 3 above. See Dkt. 39. Although this IFP application was ultimately denied as moot (see Dkt. 44), it nonetheless is worth mentioning due to one major difference: The declarations contained therein were filed under penalty of perjury.

11.     The settlement agreement we agreed to also included a provision that said that this

-2-

settlement also resolves any civil actions between the parties that could have been or should have been brought in this case, a provision I will refer to as the "Release of Claims Clause."

Investigations into Jones' Financial Status

12.     Once the settlement was agreed to, I wasted no time availing myself of the right to investigate Jones' financial status. I sent Jones an email asking for various proofs of his finances, including, among other things, his tax returns as per Judge Kewalramani's suggestion.  See **Exhibit A**. He immediately replied showing proof of his Social Security earnings. See **Exhibit B**. This, however, does not actually show proof of his SSI. In fact, it only proves that he was in fact lying about being just as broke as me.

13.     I asked him when he'll be able to get the rest of the stuff I asked for. See **Exhibit C**. He replied and said he would have "the rest of the financials" by Monday. See **Exhibit D**. He said he would need even more time to get proof to me about the other Jarrod Jones he was talking about, but he didn't specify a date certain.

14.     Monday came, and I sent him an email reminding him of it. See **Exhibit E**. At 9:22AM central time (which was 7:22AM in his and the Court's time zone),  Jones responded, saying he was "at work," and didn't know when his "out time" would be. See **Exhibit F**.

15.     Monday has now come and gone, and I haven't heard from him at all, certainly not to reply with the evidence he said he would have by that date.

**Arguments**

16.     There are two reasons why the Court should hold hte Defendant in violation of the settlement agreement and issue liquidated damages of $10,000 accordingly.

Jones has violated the Cooperation Clause

17.     First, the Defendant has not fulfilled his contractual obligations under the Cooperation Clause to reasonable cooperate with my attempts to investigate his financial status, and should be held to be in breach accordingly. To be fair, what counts as "reasonable" is open to quite a bit of interpretation. However, I would argue that, as long as the Defendant agrees that a certain time frame is reasonable, he should not be allowed to later dispute the reasonableness of the time frame he previously agreed to. Here, he agreed to have the rest of the "financials" by "Monday"

-3-

(aka July 29, 2024). Therefore, by his own admission, giving him until Monday was reasonable.

18.     He failed to meet his own, self-imposed deadline. Therefore, even if the Court, acting on its own, would not have found that deadline to be reasonable, the Court should nevertheless hold the Defendant to his own self-imposed definition of reasonableness.

19.     Therefore, he is in breach of the settlement agreement and should have to pay the liquidated damages accordingly.

<u>What little cooperation Jones did provide shows that he did indeed materially lie about his financial status to gain leverage in settlement negotiations.</u>

20.     Even if the Court disagrees that "Monday" is a reasonable time frame for him to reply to my investigation requests, despite the fact that he himself admitted that Monday was a reasonable deadline, the Court should still hold that the Defendant is liable for the $10k liquidated damages he agreed to on account of the fact that what little cooperation he did provide proves that he did indeed materially lie about his financial status, just as I suspected.

21.     Remember that Magistrate Judge Kewalramani is a witness to what Jones said about his own financial status, so if he tries to deny that he ever said any of the things mentioned in ¶¶ 3(a)-(d), I have proof that he said them. If he hadn't assured me of those things, I would not have agreed to such a pitiful settlement as $100 per month for 18 months.

22.     In his initial response, he proved that he does, indeed, have taxable income (and, therefore, income that I could garnish if I got a judgment against him). This directly contradicts the representation he made to me in ¶ 3(a), which said that his only income could not be garnished. Even if his income was still small enough that he could honestly say he "lives hand to mouth," the fact that it was *garnishable* alone makes it materially different than what he represented to Judge Kewalramani (and, therefore, me) during the mediation, and therefore makes it more valuable for purposes of obtaining favorable settlement terms.

23.     Then, there was the email he said he was "at work." This directly contradicts the representation mentioned in ¶ 3(c).

24.     Furthermore, these two pieces of evidence also prove that Jones committed perjury when he filed his Application for Leave to Proceed In Forma Pauperis, as I described in ¶ 10 above.

### Relief Requested

25.      In light of these two material breaches of the settlement agreement, I ask the Court to do the following:

26.      First, I ask the Court to order the Defendant to pay me the $10,000 in liquidated damages he agreed to pay under these conditions, in addition to the $100 per month for 18 months (with the first payment due September 5, 2024) he already agreed to pay.

27.      Second, I ask the Court to refer the Defendant to the Office of E. Martin Estrada (US Attorney for the Central District of California) with recommendations of perjury charges for the perjury he committed in Dkt. 39 in this case.

28.      Third, I would like the Court to declare that the Release of Claims Clause mentioned in ¶ 11 above does not apply to me filing a fraudulent misrepresentation claim against Jarrod Jones in the future for actively misleading me into thinking he was much less financially solvent than he actually was, and therefore tricking me into agreeing to much less favorable settlement terms than I otherwise would have agreed to. I may choose not to bring that claim if Jones pays the liquidated damages in a timely manner, but I still would like the Court to, at a minimum, declare that the Release of Claims Clause alone is not an absolute bar to such a claim. Maybe Jones might have other defenses to the tort of fraudulent misrepresentation, just not the Release of Claims Clause.

29.      The reason for this declaration is that the Release of Claims Clause only included claims that I *could have or should have* brought as part of this claim. So, for example, if I wanted to also sue Jarrod Jones for libel for the stuff he posted about me on Kiwi Farms, I was forfeiting my right to bring those claims too, since there was no good reason why I shouldn't have brought that in the original Complaint.

30.      But here, I didn't have the proof of the fraudulent misrepresentation until after the settlement had been agreed to. I had my suspicions, (hence why I demanded the Investigation, Cooperation, and Liquidated Damages clauses), but no solid proof until now. Therefore, it doesn't count as a claim that "could have or should have been included" in the original lawsuit.

31.      Again, Jones may have other defenses. I am not asking the Court to strip away any

defenses that Jones otherwise would have had if the Release of Claims Clause never existed in the first place. I am simply asking that the Court declare that this one claim is not covered by that Clause.

## Conclusion

32.     Wherefore, premises considered, I respectfully pray that this Court grant the relief requested above.

So requested on this, the 30th day of July, 2024.

David Stebbins (pro se)

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C



# EXHIBIT D



# EXHIBIT E



# EXHIBIT F

