

David Stebbins (pro se Plaintiff)     123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947                              acerthorn@yahoo.com

UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                              PLAINTIFF

VS.                              Case 8:24-cv-01486-JVS-KES

JARROD JONES                                                                  DEFENDANTS

### RENEWED MOTION FOR CONTEMPT OF COURT

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Renewed Motion for Contempt of Court in the above-styled action.

**It was Jones' fault that his bank got frozen, if it even was frozen at all.**

1.     Supposedly, the reason Jones missed the October payment was because his bank account was "locked due to an ongoing fraud investigation." See **Exhibit A**. This should create a rebuttal presumption that it is his fault that his account got frozen. See United States v. Asay, 614 F. 2d 655 (9th Cir. 1980) ("Inability to comply with an order is ordinarily a complete defense to a charge of contempt. An exception exists when the person charged is responsible for the inability to comply").

2.     During our conference, Jones said the lock began in mid September. I don't remember the exact date he gave, though.

3.     Jones says that his account was only locked, not because he himself was under investigation for fraud, but because he had reported fraudulent charges to his account. However, there are two problems with that:

4.     First, he offers no proof. During our conference, he held up a sheet of paper for the camera, but I couldn't read anything on it because the camera was so low-resolution. I asked him to scan and send it to me, but he never did. Even in his "status report" that he recently filed with the Court, he doesn't even include that as an exhibit.

5.     Second, even if the lock on his account wasn't his fault, that still doesn't make it impossible for him to pay me. See FTC v. Affordable Media, 179 F. 3d 1228, 1240-41 (9th Cir. 1999):

> "We leave for another day the resolution of this more difficult question because we find that the [defendant has] not satisfied their burden of proving that compliance with the district court's ... order was impossible. It is well established that a party petitioning for an adjudication that another party is in civil contempt does not have the burden of showing that the other party has the capacity to comply with the court's order. Instead, the party asserting the impossibility defense must show 'categorically and in detail' why he is unable to comply." (Citations and quotations omitted).

6. So his account was frozen. Well, that still doesn't explain why he couldn't have, for example, gone to the Post Office, gotten a money order[1], paid for it with cash, and then mailed that to me with a tracking number, or pursued an infinite number of other alternative avenues.

7. For that matter, it seems highly unlikely that his bank would have frozen his account just because he complained about a single unauthorized charge. This happened to me a few months ago. On May 13, 2024, I noticed that I was still being charged monthly by Spokeo (who helped me locate Jarrod Jones for this lawsuit), and I contacted my bank and asked them to refund the charges and block Spokeo from being able to charge me again. See **Exhibit B**. But you know what they didn't do? Freeze my account!

8. You know *why* they didn't freeze my account? Because they know that would have been devastating to me. I need that money to buy things like groceries, and they know it.

9. So if Jones's account was frozen over something as blameless as this, how did he buy groceries or put gas in his car? Those are near daily expenses, unlike rent or settlement payments, so if his account was locked from mid-September (like he claims) until October 8, that was nearly a whole month that the bank expected him to basically starve. So the odds that a bank would actually do something like that over a single unauthorized charge is baffling, especially considering how, as I mentioned above, *he attaches no proof* despite claiming to have proof!

10. And if he had an alternative source of cash for things like groceries and gas, why couldn't he have used that alternative source to pay me using the aforementioned money order method?

11. Furthermore, even if he could somehow prove that all of this was not his fault, and that he had no source of money whatsoever, not even to buy groceries with, there's still steps he could have taken. For one, he could (and should) have gotten in touch with me to notify me of these

---
1 See https://www.usps.com/shop/money-orders.htm.

problems. Second, why didn't he ask his employer to pay him in person instead of via direct deposit just this once, since he couldn't access his paycheck any other way? Even discounting the debt he owes to me, that seemed like the prudent thing to do anyway, given the aforementioned need to buy groceries and stuff.

12.     All in all, there is no reason to believe that Jones' failure to make payments on time is anyone's fault but his own. But even barring all of that, there is still another reason why this Court should hold Jones in contempt.

### There is a clear pattern of noncompliance and delay on Jones' part.

13.     Under Federal Rule of Evidence 404(b)(1), evidence of prior bad acts is not admissible to prove that the defendant did a similar thing in the instance matter. So, for example, in a domestic battery case where a boyfriend is accused of beating his girlfriend, evidence that he beat his ex girlfriend in the past is not admissible to prove that he beat his current girlfriend in the matter he is currently being charged with. However, if the defendant's actions are undisputed, but his motive, intent, or other mens rea is disputed, then under Federal Rule of Evidence 404(b)(2), evidence of prior bad actions is admissible to prove such things as motive, intent, opportunity, lack of mistake, and lack of accident. So for example, in the Arkansas case of Jon Shatwell v. State of Arkansas, 430 SW 3d 142 (2013)[2], when Shatwell changed his story to say that his girlfriend's death was due to an accidental gun discharge, the prosecution was allowed to bring in the testimony of his ex girlfriend to talk about how he used to threaten her with a gun in order to prove premeditation. Had Shatwell stuck to his original story (that she died by suicide), the testimony of his ex would have been inadmissible.

14.     Applying this law to the instant case, the fact that Jones failed to make the October payment by the agreed upon due date of October 5th is undisputed. If it were disputed, then all the things I'm about to discuss would be inadmissible. But since it's undisputed, then everything I'm about to discuss is admissible to prove that he is most likely doing this on purpose, or at the very least acting with a complete disregard for the seriousness of the situation.

15.     Throughout this entire case, and subsequent execution of the settlement agreement, Jones has consistently failed to act until he was literally forced to.

---

2   Which you can read about here: https://scholar.google.com/scholar_case?case=7861782958142706378

(a) He repeatedly ignored my invitations to enter into settlement negotiations, and only attended the July 25 one because the Court ordered him to attend. See Dkt. 30-1 ("I want trial by combat... Trial by combat only"). See also Dkt. 51 Page 5 ("Plaintiff has contacted Defendant with an offer to settle... the Defendant has decided to not respond further").

(b) He ignored the summons that was served on him via email (see Dkt. 37), even though he knew about the case since its inception (see Dkt. 30-2), only finally appeared in the case after I had filed a Motion for Default Judgment that, among other things, would have imposed on him a near lifelong obligation to either purge his infringing post from the entire Internet (which may well have been impossible) or spend the rest of his life in contempt of court. Then and only then did he finally decide that it was a bad idea to ignore the case, and finally make an appearance.

(c) He was repeatedly caught in multiple bald-faced lies, including, but not limited to...

　i. Claiming in his Motion to Set Aside Entry of Default that he wasn't aware of the lawsuit until he got sent a text by his parents after the Motion for Default Judgment was pending (see Dkt. 45, ¶ 4), when he already knew about the case since its inception (see Dkt. 30-2).

　ii. In his Answer to Complaint, denying that he reposted the stream, when said reposting was publicly visible and the Court could see it with his own eyes. See Dkt. 63, ¶¶ 7-9.

　iii. Claiming that I have not registered the copyright with the U.S. Copyright Office, when said registration was clearly visible through a simple search of the Copyright Office's public catalog. See Dkt. 63, ¶¶ 14-15.

　iv. Claiming that he downloaded my stream using the YouTube Premium download option, when I was clearly able to prove that this was impossible, meaning he necessarily lied when he said that's the method he used. See Dkt. 69.

(d) He assured me he would have evidence to prove his net worth by "Monday" (aka July 29, 2024), but then, that date came and went without me hearing from him. When I filed a motion to hold him to account (see Dkt. 79), he whined and complained that he only delayed

in complying because he was "exhausted after a work shift,"[3] which is one of the most entitled attitudes I have ever seen from a 33 year old man. As I explained in Dkt. 81, ¶ 33, "[i]f him being 'tired' wouldn't be an excuse to get out of taking out the trash, why should it be an excuse here?"

(e)     He was supposed to submit a sworn affidavit of his net worth by August 15. He failed to do so by the agreed upon date, and when I complained (see Dkt. 83), the Court gave him an extension of time for no reason (see Dkt. 86), even though he was *already required* to provide the declaration anyway! And for the record, he still hasn't given *any* excuse (let alone a good one) for why he failed to comply with that provision by the agreed upon date.

16.     So far, I can think of only one time in this entire matter when Jones has complied with his obligations entirely on his own, without having to be forced to either by Court order or by me filing a motion, and that was when he sent me the $100 payment for the month of September. That's it. That's the only time I can think of when he complied entirely of his own accord.

17.     Any one of these slip-ups could be attributed to being "just a mistake." But this *keeps on happening!* At what point do we start to notice a pattern? At what point do we stop giving him the benefit of the doubt and start making him actually take some responsibility?

18.     Furthermore, the bald-faced lies I mentioned in ¶ 15(c) above don't have even that excuse. With those lies, Jones' pattern of behavior escalates from incompetent to malicious.

19.     Is Jones going to miss another payment in November or December? What about in January? Will he miss another payment then, too? And if so, will he just come up with some other excuse as well? And another? And another?

20.     Frankly, even if the Court might have been inclined to give Jones the benefit of the doubt on this one issue, taken in a vacuum, the problem with that logic is that this isn't happening in a vacuum. There's clearly a pattern of incompetence (if not outright malice) on Jones' part. The Court has every reason to nip this in the bud now, even if the Court wouldn't have been predisposed to come down on him if this were just his first mistake. At this point, he needs a good "contempt of court" kick in the rear, if only to encourage him to start taking this case seriously!

---

3   See Dkt. 80, Page 1, Lines 25-26 ("I am not allowed, by the Plaintiff, to be exhausted after a work shift, and have no time to recover").

21.   And again, all of that is assuming that this one failure to make payment on time, in a vacuum, is actually not his fault, which, again, he still hasn't proven, nor has he proven that he didn't have any viable alternatives available to him.

**The Court should fine him the maximum $4,000.**

22.   During our conference, Jones stated that the way things are done in California is that the courts typically fine a person the statutory maximum of $1,000, and more importantly, it isn't just $1,000 once, but rather, $1,000 *per day* that the settlement terms are not complied with. The payment was four days late, so that means he should incur "late fees" (for lack of a better term) of $4,000. This is by his own admission, not mine. My original Motion for Contempt only asked for a single $1,000 fine.

23.   Jones attaches an email where I made him a very generous offer: I not only took the $1k per month that I had originally assumed would be the standard, and I offered to prorate it for him, so he didn't even have to pay the full amount that he would have had to pay if the Court had just granted my motion for contempt. This was even smaller than the $100 per day that I initially asked for in Dkt. 38-8, ¶¶ 107-114. It would've stung for him (assuming he really does live hand to mouth like he claims), but it wouldn't have bankrupted him, and it would have taught him a valuable lesson about taking this seriously... a lesson he clearly needs to have taught to him.

24.   He has clearly refused this generous offer. Well, as I explained above, not only has he not proven that this wasn't his fault to begin with, but he has shown a clear pattern of bad faith behavior this entire case, and I'm honestly sick of it.

25.   So if he's still going to thumb his nose at this whole matter, then it's clear that the only way to get him to start taking this seriously is to throw the book at him, and throw it hard. He has admitted that, if he were to be held in contempt of court, he would be fined $1,000 per day of noncompliance, for a grand total of $4,000. I hereby ask the Court to order him to pay that full amount, payable to me.

26.   Even if the defendant is telling the truth about his current financial situation, this $4,000 fine still is not likely to bankrupt him. By Jarrod's own admission, he still has earning potential that he has yet to tap into. Over email, on August 11, 2024, he admitted to me that he probably

could easily get an extra part-time job in addition to the part time job he already took to pay this settlement, but if he does, he'll "get bored" because he "require[s] variety in working locations" in order to stay happy. See **Exhibit C**.

27. Oh, cry me a river!

28. Jarrod ... I've got some news for you: **WELCOME TO BEING AN ADULT!** The fact that I have to explain this to a man in his literal thirties is downright pathetic. Then again, this was a man who felt entitled to ignore his contractual obligations to me simply because he was "exhausted" (see ¶ 15(d) above), so I don't know why I was expecting anything better.

29. So even by Jones's own admission, this $4,000 fine would not "completely destroy" him. Rather, it'll basically amount to a couple of months of "grown up detention" for him, nothing more. But since he's apparently an 8-year-old trapped in a 33-year-old body, he probably thinks detention is indeed the end of the world.

## Conclusion

30. This Court has, so far, given Jones every conceivable benefit of the doubt, offering him countless ways out, many of which he didn't even ask for himself, but is instead just the Court raising defenses on his behalf, as if the Court were his own counsel. But if the Court continues to coddle him, he'll just keep doing the same things, just like a parent who refuses to discipline their child. How many second chances is this Court going to give him? It's clear, at this point, that Jones is in great need of some hard justice... some "tough love," if you will.

31. Wherefore, premises considered, I respectfully pray that the Court hold Jarrod Jones in contempt of court for four days worth of failing to make payments pursuant to the settlement agreement, and order him to pay $4,000 to me, the Plaintiff.

So requested on this, the 20th day of October, 2024.

David Stebbins (pro se)

# Exhibit A

## Motions, again?

From: jarrod stangranch.com (jarrod@stangranch.com)

To: acerthorn@yahoo.com

Date: Monday, October 7, 2024 at 01:32 AM CDT

My checking account is locked due to an ongoing fraud investigation. It will be a few days late to pay you. This is not an intentional avoision of payment.

I am waiting to get the new bank info from my bank so I can link it back to Paypal.

Would you kindly communicate before filing motions as the court asked of us in Dkt. 92.

Sincerely,

Jarrod Jones

Get Outlook for Android

# Exhibit B

## Fw: Spokeo User Feedback from User 126351414 [1685060835A]

From:   Acerthorn (acerthorn@yahoo.com)

To:     jonesborocontactcenter@arvest.com

Date:   Monday, May 13, 2024 at 10:46 AM CDT

Dear Arvest,

Here is the email corroborating my story that I gave earlier today over the phone with Angela, where Spokeo acknowledged my cancellation of their services on May 26, 2023. I will also be attaching a PDF copy of this email.

If you scroll to the bottom, you can see where it says "Please cancel my subscription *after my 1-month trial ends*. I only needed this service to look up the address of one person, and I've done that now." Emphasis added.

That emphasized part proves that I sent this message in January of 2023, but it wasn't until May 2023 that they finally acknowledged the cancellation. You can see this for yourself because, on January 3, 2023, you can see a $0.95 transaction from Spokeo on my account. This was a legitimate charge. I signed up for a trial from them. This is the one charge from Spokeo that I do not wish to dispute or have reversed.

However, because my initial cancellation request clearly said that I was still within my trial period, that proves that it was initially sent to them on in January 2023.

But even if you do not agree with that, the undisputed evidence still clearly shows that every charge from Spokeo ever since May 26, 2023 is clearly unauthorized after my subscription was cancelled.

For this reason, I humbly ask that you reverse all Spokeo charges except for the one $0.95 charge, or at the very least, every charge occurring after May 26, 2023.

Sincerely,
David Stebbins

----- Forwarded Message -----
**From:** Spokeo Customer Care <support@spokeo.zendesk.com>
**To:** David Stebbins <acerthorn@gmail.com>
**Sent:** Friday, May 26, 2023 at 03:49:27 PM CDT
**Subject:** Re: Spokeo User Feedback from User 126351414 [1685060835A]

---- Please type your reply above this line ----



Our Customer Care Team is available:
**5am to 8pm PT, 7 days a week**
Phone: **1 (888) 226-1599**
E-mail: **customercare@spokeo.com**

Spokeo Customer Care Email Ticket: "Spokeo User Feedback from User 126351414 [1685060835A]" has been updated with the following message:

**Spokeo (Spokeo Customer Care)**
May 26, 2023, 1:49 PM PDT

Dear Valued Spokeo Customer,

Thank you for contacting us.

I've cancelled the trial which discontinues all further charges effective immediately. An automated Spokeo email confirming this has been sent to the email address on file.

Sincerely,

Tiana
Spokeo Customer Care
Prefer phone or chat? Click here: https://www.spokeo.com/contact

David Stebbins
May 25, 2023, 5:27 PM PDT

User: 126351414 (non-premium)
Email: acerthorn@gmail.com
Name: David Stebbins
Topic: Billing

Message:
Please cancel my subscription after my 1-month trial ends. I only needed this service to look up the address of one person, and I've done that now.

Spokeo Blog | Spokeo Community | Frequently Asked Questions

Follow us on:   


Spokeo Cancellation.pdf
181.5kB

# Exhibit C

## Re: Requests for proof of net worth

From: jarrod stangranch.com (jarrod@stangranch.com)

To: acerthorn@yahoo.com

Date: Sunday, August 11, 2024 at 10:53 PM CDT

Both you seeking out $10,000 and $5,000 in liquidated damages will bankrupt me. I live in a shithole, there's a hole in my floor. The front of the trailer is detached from the back of the trailer.

I am just able to pay $100/mo and not that much more. Any more damages sought by you will, again, bankrupt me. My only asset I have of any value is my vehicle and I need it for work, and while there are places that are closer to me where I could seek employment, I'll get bored because I'd be going to the same place everyday, and I require variety in working locations in order to keep my attention towards employment.

Your deal will financially destroy me, but I suppose that is what you want.  I reiterate that I have no assets of the amount you assume that I do.

Second, if you think you can subpeona me for information that would require in-person court. As I am not a business entity I have no obligation to hold onto the information that I've gathered. If you're not willing to accept my offer I'm deleting what I've gathered.