

David Stebbins (pro se Plaintiff)     123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947                        acerthorn@yahoo.com

UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                               PLAINTIFF

VS.                      Case 8:24-cv-01486-JVS-KES

JARROD JONES                                                  DEFENDANTS

### REPLY IN SUPPORT OF RENEWED MOTION FOR CONTEMPT OF COURT

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Reply Brief in Support of Motion for Contempt of Court.

**Jones still doesn't show proof that his bank account was locked.**

1. Now, finally, Jones shows proof that he did indeed complain about a fraudulent charge. He shows proof that the bank would investigate the charges, but it *doesn't* say that his account would be frozen in the meantime. That is a damning omission, as it is the only reason this alleged investigation even matters at all in this case.

2. In fact, his source actively contradicts his claims by stating that he would receive a "provisional credit" while the investigation was pending. The letter says they were refunding the disputed charge in the interim but would un-refund him if they found the charges to be legitimate. But what would be the point of giving him that credit if he had no way of accessing the funds until after the investigation was complete? Of course, Jones *says* that his account was frozen despite being told he would receive a provisional credit, but he provides no *proof* of that.

3. It is unequivocally Jones's burden to prove that he was unable to comply with the Court's order. See FTC v. Affordable Media, supra at 1240-41. Since he has failed to meet this burden, the Court should hold that he was indeed able to make payments and simply didn't.

4. Barring that, the letter that Jones attaches clearly notifies him that the investigation (and, therefore, the account freeze that supposedly accompanied it) could last for up to 45 days. That letter was dated September 24. That means he was unequivocally put on notice that this freeze could have lasted as late as November 8, cutting into not only the October payment, but the

x

November one as well.

5.    So Jones was unequivocally put on notice that he was going to have some restrictions placed on him for up to 1½ months, and ... what? He took absolutely no steps whatsoever to prepare himself for that?! Even if we accept that there was an account freeze (which is not proven), there still was a laundry list of things he could have done to cushion that blow, including but not limited to the suggestion I gave in ECF 99, ¶ 11 about asking his employer to pay him in cash until further notice, as well as reaching out to me to notify me of this lock and/or filing a motion with the Court in the event that we were unable to reach an amicable compromise.

6.    At that point, his complete failure to take any steps at all to work around this purported account freeze is 100% his fault. Even if the account freeze (A) happened, and (B) was 0% his fault, his decision to react to this alleged lock by simply sitting on his hands is entirely on him. At that point, the equitable maxim "vigilantibus non dormientibus aequitas subvenit[1]" should strip Jones of any sympathy he may have otherwise had.

7.    Last but not least, there is one final "Plan Z[2]" that Jones had at his disposal: Sell his vehicle for the $6,000 it was worth, set aside $1,700 to ensure he'll have the money to pay the remainder of the settlement, and then use the remaining $4,300 to may get himself another car. Of course, he doesn't want to do that, but what he *wants* is entirely irrelevant. I have a *right* to be paid on or before October 5th. My *rights* come before his *wants*, and that's simply all there is to it.

8.    So overall, not only is there no proof that his account was locked, but he undeniably had options at his disposal to still be able to comply with the settlement, and his failure to take advantage of them is entirely his fault. The Court should hold him to account accordingly.

**Even if his account was locked, it was still Jones' responsibility to ensure I get paid.**

9.    But even if we assume that Jones' bank account really was locked, that lock wasn't his fault, and there was no amount of preparation or contacting me in advance that could have even slightly mitigated the effects of the lock (including the "Plan Z" mentioned above), it ultimately doesn't save him in this case. I actually asked a lawyer about this.

10.    Specifically, I asked on Avvo, a web-site where anyone is allowed to post a legal

---

1  English: "equity aids the vigilant, not those who sit on their rights"
2  So named because it is meant to be an ***absolute last resort***

question, but only those who are verified by the site as being licensed to practice law in at least one state are allowed to post answers, thus ensuring that the responses contain a certain baseline level of reliability, unlike other Q&A sites like Quora. The question I asked can be found at the following URL: https://www.avvo.com/legal-answers/authorized/6114286.html.

11.     CA attorney Pamela Koslyn stepped in and offered an opinion on this matter. James Arrasmith also weighed in, but Koslyn insisted that his opinion is not to be trusted, so I will focus only on her comments for the time being.

12.     Notice how, in one of her comments, she states that "If your agreement required payment from any source, then one bank's policies are irrelevant." The agreement in fact does not require payment from any specific source, so this opinion is pertinent.

13.     So it ultimately doesn't matter if his account was locked or not. He still had to pay me all the same. If his normal payment method was out of commission, then he should have just *found a way* to ensure I got paid.

14.     Think about it this way: If you miss a payment on your car loan because your bank account got frozen, you still miss a payment, and the dealership still has the right to repossess your car. Even if the account freeze was outright *illegal*, that doesn't mean the dealership doesn't get to repossess your vehicle; at best, that just means the bank can be liable to you for getting your car repossessed, but the dealership would not be involved in that. Even if there were no alternative methods of paying the dealership[3], and you were just completely screwed, it still doesn't matter as far as the dealership is concerned. You default on your payments, the dealership has the right to repossess. Period.

15.     The Court should so hold here.

**My use of FRE 404(b) is not misplaced because the federal rules of evidence apply to both criminal and civil cases.**

16.     In an attempt to invalidate my argument that FRE 404(b) lends itself to a finding that the Defendant is acting in bad faith, he attempts to deflect by arguing that it only applies to criminal law. But this is not the case. The federal rules of evidence are equally applicable to both civil and criminal cases alike, unless a portion of the rules explicitly states that it is only applicable in one

---

3   which, as mentioned above, there could easily have been in this case if Jones had actually shown any agency

or the other type of case.

17. In fact, this very rule of evidence already contains not one, but two instances where that sort of explicit statement is given: FRE 404(b)(3) and FRE 404(a)(2) both explicitly say that they are only applicable "in a criminal case." If this entire rule were not applicable in civil cases generally, there would be no need to specify that in those two subsections.

18. My use of the examples regarding domestic battery and homicide were just that: Mere examples, designed to illustrate how this law is ideally applied in practice. The fact that Jones didn't pick up on that is honestly frustrating.

19. Barring that, it is rather telling that Jones makes no effort to address the majority of the prior bad acts I complained about in ¶ 15 of the Renewed Motion. The only one he makes even a nominal effort to address is him allowing the entry of default that I complain about in ¶ 15(b). This means that he effectively concedes, pursuant to the doctrine "qui tacet consentitur videtir," that my complaints in ¶ 15(a), ¶ 15(c)(i), ¶ 15(c)(ii), ¶ 15(c)(iii), ¶ 15(c)(iv), ¶ 15(d), and ¶ 15(e), are all legitimate complaints that do indeed lend themselves to a finding of bad faith.

20. To the extent he addresses the complaint in ¶ 15(b), he insists that he didn't receive the summons and complaint because he had deleted the email address of zellzander@gmail.com. To that, I offer the following rebuttals:

(a) First, as I explained in Dkt. 47, his deleting the email account was an act of deliberate obfuscation in its own right.

(b) Second, he still received the email because I sent it to multiple other email addresses known to be associated with him.

(c) Third, it ultimately doesn't matter because Jones was already aware of the case since its inception two years ago. As I explained in Dkt. 30, "[a]t this point, service of process is merely a formality. The Court could probably forego service entirely, and simply post an order, appearing only on Pacer, ordering him to appear within 21 days, and treat that as service effected. While the propriety of that action may be questionable under the Federal Rules of Civil Procedure, the Defendant's *constitutional* right to notice would still be satisfied." Therefore, he still "deliberately ignored the summons" all the same.

21.     Therefore, all of his prior bad acts lend themselves to a finding that he is intentionally giving me and the Court the run-around on this settlement.

### Defendant's attempts to portray my reactive abuse as unprovoked

22.     The Defendant complains about my alleged lack of professionalism. I disagree. I believe I am seeking only to hold him accountable. But even if my behavior could be seen as unprofessional or childish, the Court should also consider whether my behavior is unprovoked, or if it in fact "reactive abuse."

23.     It is honestly a misnomer to call it "abuse," because it is no more a type of "abuse" than self-defense is a type of murder. In laymen's terms, it means that a person (the abuser) targets another individual (the target) for prolonged harassment and torment. Each individual act of harassment, taken in isolation, may seem banal and insignificant to an outside observer. However, it is not simply one or two incidents happening in isolation. The abuser keeps it up over an objectively unreasonable period of time. They harass and harass you, until you push back and defend yourself. They do not let up. They will pick pick pick pick pick pick PICK at you, until you completely lose your mind. So now, at this point, the target has lost his mind. He's yelling. He's screaming. He's completely done with the abuser. So now, in this moment, the abuser calms down, centers himself, and says "Look at you. Look at how toxic and abusive you are. It's just like I said. You're completely out of control." They then proceed to tell third parties (e.g. police, co-workers, or in this case, judges) the same thing in order to ruin the target's reputation.

24.     Here are few online sources to give the Court a brief introduction to reactive abuse:

   (a)     https://www.choosingtherapy.com/reactive-abuse/
   (b)     https://www.aconsciousrethink.com/18895/reactive-abuse/
   (c)     https://breakthesilencedv.org/reactive-abuse-what-it-is-and-why-abusers-rely-on-it/
   (d)     https://www.garbo.io/blog/reactive-abuse

25.     Jones' behavior in this case (and in the events leading up to me filing this case) are a textbook example of the king of behavior that tends to result in reactive abuse. He joined the Acerthorn Hate Campaign because he thought it was funny to dox me and make up horrible untrue rumors about me. He joined Kiwi Farms – one of the most notorious hate groups on the

entire Internet – and took his harassment and doxxing of me there as well. He felt he had the right to repost my paywalled content just because he wanted to. He had the audacity to send me an email demanding trial by combat (see Dkt. 30-1). Over on Discord, he even told everyone that he was going to issue a false report on Reddit so that Reddit will harass me because they think I'm suicidal. See **Exhibit A**. He then proceeded to actually send that false report (see **Exhibit B**), harassing me directly, not just talking smack about me on a forum that I may or may not monitor.

26. Then, when I actually hold him to account by suing him, he has the gal to say that *the lawsuit itself* has taken a toll on his mental health. See Dkt. 51, Page 5, where he tried to raise this as a counter-claim.

27. Now, he is claiming that my observation of his lack of maturity in handling his own finances is itself inflicting psychological harm? He previously insisted that this very lawsuit was itself causing that same harm, so why should we believe him now? Even if those observations of his lack of financial responsibility could be seen as harassment, given what he has put me through, I have every right to vent my frustrations at him, especially given how he has repeatedly and consistently given me the run-around this entire case as I explain in ECF 99, ¶ 15.

28. I am frankly reminded of a few more TikToks that perfectly encapsulate Jones' hypocrisy:
    (a) https://www.tiktok.com/@a.bath/video/7417859800525999391
    (b) https://www.tiktok.com/@bearlynotional/video/7414288016081964330
    (c) https://www.tiktok.com/@pursuing_world_class/video/7109132834127777066
    (d) https://www.tiktok.com/@mrblakew/video/7118496330841918763
    (e) https://www.tiktok.com/@fearlessmentality_/video/7333303070295723297
    (f) https://www.tiktok.com/@mojocasausfillipo/video/7332788097094274350
    (g) https://www.tiktok.com/@fearlessmentality_/video/7283888270256164129
    (h) https://www.tiktok.com/@danielleradin/video/7295135449436310830
    (i) https://www.tiktok.com/@elvenempress/video/7291523102582852907
    (j) https://www.tiktok.com/@donaldphifer/video/7289732595489787167
    (k) https://www.tiktok.com/@eq_therapist/video/7267096903274335521
    (l) https://www.tiktok.com/@taylorrexxx/video/7261736745899789610

(m)  https://www.tiktok.com/@insightswithin/video/7258687968477531434

(n)  https://www.tiktok.com/@nerdytravelingwriter/video/7218386727054970158

(o)  https://www.tiktok.com/@healinghumanity777/video/7202252261626662190

(p)  https://www.tiktok.com/@healinghumanity777/video/7194846813067742507

(q)  https://www.tiktok.com/@princeofplagues/video/7169743300314828038

29.  So when the Defendant complains about my allegedly inappropriate behavior, please keep this in mind.

**Jones' attempts to portray me as greedy ignores the generous offer I made to him.**

30.  When I asked for a $4,000 fine to teach Jones a lesson, he insists that this request is done out of nothing but pure greed. But this ignores the fact that this request is only on the table in the first place because he rejected my offer that I would not refile the Motion for Contempt if he had agreed to a "late fee" (for lack of a better term) of $129.

31.  I will be the first to admit this much: What I want, more than anything, is to obtain a vehicle, so I can get a job. During the mediation, I repeatedly told Magistrate Judge Kewalramani as much. Of course, the $1,800 settlement that I ultimately agreed to is not enough for me to get a car. I tried, but I wasn't even able to even so much as get *financing* for a vehicle unless I agreed to minimum payments of $200 per month, not $100. That said, giving me an extra $4,000 would surely be enough to get a clunker vehicle.

32.  So am I asking for that out of pure greed? Am I just trying to use this contempt of court motion as a second bite at the apple, when the settlement didn't give me what I ultimately wanted? Well, if that were the case, why would I have offered to drop this motion in exchange for a measly $129? That isn't even going to bring my total monetary recovery from this settlement up to $2,000, and certainly not enough to get a vehicle that won't break down inside a month anyway, thereby completely wasting my money.

33.  Then, he goes onto say "[h]is demand that these fines are paid directly to him, rather than the court, is a clear attempt to try to exploit the legal process for financial gain." This is false. It is standard and appropriate in cases like this for contempt fines to be paid to the plaintiff. When the *reason* for the defendant being held in contempt of court in the first place is to ensure the

plaintiff is compensated, rather than to enforce the court's authority, it is commonplace for the fines to be paid to the plaintiff. See Hicks v. Feiock, 485 US 624, 632 (1988) ("If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court"). Of course, that same case law (in fact, the same *paragraph* within that same case law) also states that, whenever a sanction for contempt of court is punitive and not remedial, it "may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." See id. Therefore, unless the Court wishes to appoint the Public Defender's Office to represent the defendant on this motion (and I don't think it wants to do that), then the fines *have* to be payable to me.

### The Defendant's request for sanctions is filed in violation of FRCP 11(c)(2).

34.     Federal Rule of Civil Procedure 11(c)(2) states in pertinent part ...

> "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."

35.     Jones closes his response by including within it a motion for sanctions. This violates Rule 11(c)(2) in at least two ways: First, it is not a standalone motion. Second, he did not serve it on me 21 days before actually filing it, with the opportunity for me to avoid sanctions by withdrawing the motion. Even if the motion had merit, these two deficiencies still kill it.

36.     Barring that, I am not filing these motions simply to harass the defendant. I am filing them in order to hold the defendant to account. His insistence that my filings demonstrate a lack of willingness to resolve this matter in good faith is also false, as evidenced by my aforementioned reasonable offer to the defendant to resolve this for a reasonable sum that would barely help me at all in my quest to get a car so I can get a job, but would still have taught him a lesson about adhering to your financial obligations and handling your money responsibly.

37.     In short, Jones's request for me to be sanctioned is frivolous.

### Conclusion

38.     Wherefore, premises considered, I respectfully request that the Renewed Motion for

Contempt of Court be granted.

So requested on this, the 22nd day of October, 2024.

                                                                                            David Stebbins (pro se)

# EXHIBIT A



# EXHIBIT B

