

FILED
CLERK, U.S. DISTRICT COURT
NOV 20, 2024
CENTRAL DISTRICT OF CALIFORNIA
BY        mp        DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

David Stebbins (pro se Plaintiff)          123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947                             acerthorn@yahoo.com

UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                        PLAINTIFF

VS.                    Case 8:24-cv-01486-JVS-KES

JARROD JONES                                          DEFENDANTS

## MOTION TO ENFORCE SETTLEMENT AGREEMENT

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion to enforce the settlement agreement in the above-styled action, as the defendant has committed an anticipatory breach of the settlement agreement.

### Disclosure

1.      This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 9-13, 2024. See **Exhibit N**.

### Background

2.      Jarrod Jones and I agreed to a settlement in the above-styled action which, among other things, requires the defendant to pay me $100 per month for 18 months, due on the 5th day of every month. See ECF 78. The Court retains jurisdiction over enforcement of the settlement agreement.

3.      The settlement does not specify a method by which I should be paid.

### Earlier proceedings

4.      On September 4, 2024, the Defendant contacted me and requested my "payment information" so he could submit his first payment. See **Exhibit A**. I reminded him that he could simply mail the check to me, while also reminding him that the payment was due the next day, so if he hadn't already sent the payment by then, he likely was going to miss a payment. See **Exhibit B**. He offered to "alleviate this for this month" by providing the payment via a direct bank transfer. See **Exhibit C**.

5.      I was admittedly apprehensive about handing over my bank account information to a man

-1-

who could very easily turn around and post it online for all the world to see, handing countless anonymous and malicious people the tools to withdraw all my money from my bank account and even take out loans in my name. So I offered to give that information on the condition that (A) he never reveal that information to anyone, and (B) he agree to another liquidated damages clause in order to enforce the first condition. See **Exhibit D**.

6.      Needless to say, he could not agree to this very reasonable request, so I offered him an alternative: Pay me via PayPal, and cover the PayPal fees so that I am left with $100 even after those fees are taken out. I informed him that this means he would need to send at least $104.12 in order to ensure I would still have the contractually-required $100 left over. See **Exhibit E**.

7.      Jones replied to the latter offer and said "this is acceptable." See **Exhibit F**. I told him to send the payment to the same email address he's been writing to in order to contact me, and so he did, paying $105 on September 5, 2024. See **Exhibit G**. He also sent a payment of $105 on October 9, 2024 (see **Exhibit H**), although the payment was still four days late, the lateness of which is currently being adjudicated in ECF 99.

8.      On November 2, 2024, I contacted Jones and asked if there would be any problems with him paying me this month. See **Exhibit I**. On November 3, 2024, he replied and confirmed there would be none. See **Exhibit J**. However, later that same day, he sent me a payment via PayPal, but only for exactly $100. See **Exhibit K**.

9.      This means that, after the PayPal fees were taken out, I would only be left with $96.02. See https://www.salecalc.com/PayPal?p=100&l=us&r=0&e=0&f=0&m=1&c=0.  This means that he still owes me $3.98 for the month of November 2024.

10.     I immediately contacted him about this. That correspondence, in its entirety, is hereby attached as **Exhibit L**. To briefly summarize...

    (a)     He has now, three months into the settlement, unilaterally decided that the PayPal fees should be my responsibility, even though they weren't my responsibility before.

    (b)     He has unilaterally decided that us agreeing to PayPal "changes the agreement," and therefore changes the amount that I am to receive.

    (c)     He has decided that he did not agree to cover the PayPal fees, even though he very

clearly did.

(d)     He claims that his intention was to use ACH transfer as the default method of payment, even though his previous mention of that payment method clearly indicated that it was only meant to be for "this month" in order to "alleviate" the delay caused by him not having already mailed the check. Those were literally his *exact words*.

(e)     I then informed him that, if the deadline of November 5th came and went without him sending me the rest of the payment. I also explained that I believed this email correspondence was sufficient attempt to resolve this matter between us, so I am now at liberty to file this motion without it being denied without prejudice like the Court did in ECF 97.

11.     Jones submitted an additional $5 payment on November 4th, 2024. See **Exhibit M**.

<u>November proceedings</u>

12.     After receiving that payment, on November 9, 2024, I contacted Jones again, asking him to confirm if he would comply with the settlement in full moving forward. The entire conversation is hereby attached as **Exhibit N**. The highlights of the conference are as follows:

(a)     He once again doubles down and insists that the fees should be my responsibility, not his.

(b)     He believes that the PayPal fees I am referring to above are for me to withdraw the money from my paypal balance into my bank account. But that is not true. I am talking about the money being sent from his paypal account into my paypal account.

(c)     He refuses to mail the check to me, alleging the potential for it being lost, stolen, or the check itself being altered.

(d)     He refuses to agree to my proposed liquidated damages clause as a condition for me handing over my bank account information so he can use a direct bank transfer to pay me, to protect me from being further doxxed.

13.     On November 13, 2024, I sent him one final message, notifying him that I would not respond further.

14.     One week (as required by local rule 7-3) has passed since sending that message, and Jones has not assured me that he would comply with the settlement by ensuring that I would

receive $100 when it's all said and done. He has sent me more correspondence, but I already informed him that I had no intention of responding to that.

## Argument

15.     For the following reasons, the Court should find Jones to be in breach of the agreement.

<u>Anticipatory Breach</u>

16.     Jones has unequivocally announced that he does not intend to pay me the full amount moving forward. This qualifies as an "anticipatory breach of contact," and therefore gives me standing to move to enforce the settlement even before the next due date for a payment passes.

17.     Therefore, this motions is properly before the court.

<u>Jones already agreed to cover the fees. He can't unilaterally back out of that agreement.</u>

18.     First, Jones unequivocally agreed to cover the PayPal fees. He unequivocally said "this is acceptable" when I not only asked him to cover the fees, but even told him exactly how much he would need to send in order to ensure I would receive $100 after the fees were deducted. He says he never agreed to cover the fees, but this is clearly a bald-faced lie. Of course, telling bald-faced lies is his MO, as I explain in ECF 99, ¶ 15(c).

19.     For the sake of argument, let's entertain Jones' assertion that he only agreed to cover the PayPal fees for the month of September. First of all, the fact that he also sent $105 for the month of October significantly undermines that. But even if we accept his allegation that this was sent in error (even though his track record for lack of truthfulness so far, as set forth in ECF 99, ¶ 15(c), not only gives us no reason to believe him, but every reason to assume he's lying, for reasons I already explained in ECF 99, ¶¶ 13-14, referring to FRE 404(b)(2)), it still doesn't matter. Even if that agreement only applied to September, the fact that he continued to use PayPal to pay me means that he is acting under an implied agreement that this payment would be subject to the same terms and conditions that he had previously explicitly agreed to.

20.     Think about it this way: I moved into my current apartment in March of 2012. Needless to say, the original lease expired long ago, and I have now been going month-to-month with my landlord for over a decade. That said, in the event that a judiciable dispute were ever to arise

between me and him, the courts in my area would almost certainly assume that our handshake lease was meant to be governed by the same conditions that are contained in the now-obsolete written lease, unless the parties had mutually agreed to a modification of those terms.

21.    This Court should likewise hold here. Where (A) Jones agreed to cover the PayPal fees for September, and (B) Jones continued to pay with PayPal for the months of October and November, the Court should likewise hold that the agreement to use PayPal to pay me for the settlement should be governed by the September 4th agreement unless Jones can show proof that the parties had explicitly agreed to modify those terms. Since Jones obviously cannot prove that I ever agreed to such a modification, then the original agreement should hold, and that includes him covering the PayPal fees.

22.    At the very least, Jones should not be allowed to unilaterally just start acting pursuant to the modifications he has unilaterally decided on, without even notifying me first. Even websites – whose terms of service are frequently adhesion contracts that are frequently unilaterally updated by the sites without the users getting any say in the matter – are still required to at least *notify* their users of any changes to the service. See Int'l Markets Live, Inc. v. Thayer, 2022 WL 4290310 (D. Nev. Sept. 16, 2022).

23.    Here, Jones didn't even do that much. He literally just proceeded to only send exactly $100, knowing that would leave me with less than the agreed upon amount once the PayPal fees were deducted, simply because he, unilaterally and without even so much as notifying me, decided that he no longer wished to cover the fees himself, and only spoke up after the deed was already done, after I had complained. Even before the Int'l Markets v. Thayer case, those websites still had to, at the very least, post the changes to their website and expect end users to regularly check the terms to see if anything had changed. Even those websites, with all their high-powered corporate attorneys at their disposal, cannot simply start enforcing new terms that objectively are not in the terms of service, let alone that the users were given actual or constructive notice of.

24.    Therefore, Jones should be made to follow the terms he agreed to, or stop using PayPal to pay me.

<u>The pre-existing duty rule means that Jones cannot unilaterally require</u>
<u>my bank information or force me to accept less than $100/month.</u>

25.    The settlement does not require any method of payment at all. At the start of the settlement, I expected Jones to simply mail me the check each month. He didn't need my "payment information" to do that. He already had my legal name (so he knew who to write the check out to) and my address (so he knew where to mail the check). This means he already had the ability to comply with the settlement agreement without any additional information from me.

26.    This means that he cannot unilaterally require I hand over my bank account information (especially given the concerns I raised in ¶ 5 above) as a condition for him complying. It would be one thing if he couldn't pay me at all without that information, but he could, so that information was not necessary. So he has no right to demand that information from me as a condition for him paying me. It's called the "pre-existing duty rule," and it a well-established, black letter law that goes all the way back to old English common law, long before even the New World was discovered by Columbus, let alone the USA became an independent nation.

27.    Jones says that he always wanted ACH direct transfer to be the default method of payment? Well, in addition to that contracting his previous statements that that method was only meant to "alleviate" the issues regarding delay "for this month" (the month of September), he also has no unilateral authority to impose that onto me when I'm not comfortable with that method of payment for reasons I already explained. If he wanted to negotiate that, he should have done so during the mediation. But he can't now hover his own compliance over my head in order to force me to unilaterally agree to additional terms.

28.    Nor can he require that I get accounts with any new services, such as Venmo or CashApp, as that would require I agree to new terms of service that I may not be comfortable with.

29.    If you don't want to cover the PayPal fees, just mail the check to me with a tracking number. This isn't complicated. If he's worried about me denying that it got delivered, he is free to get a return receipt in addition to certified mail. If he is worried that I might try to dispute the check amount, he may also get it in the form of a money order or cashier's check, either of which would have independent third parties (e.g. the US Postal Service or the bank that issued the

cashier's check) who can independently verify the amount to be paid.

<u>Paypal fees vs mailing costs</u>

30.     One final thing he cites as a reason why he refuses to mail the check to me is "the additional mailing costs." See Exhibit N. It's his job to get the money to me each month by any means necessary. How he does that is up to him, but it's also up to him to cover whatever expenses, on his end, that might incur.

31.     Judging from his correspondence, it seems that he understands that, if he were to mail the check to me each month, he would be responsible for all of the associated fees (stamp, envelope, certified mail, return receipt, and also the fees for purchasing the money order or cashier's check itself), and that he wouldn't be allowed to simply deduct those expenses from my $100.

32.     But then, if he accepts that, then what exactly is the difference between him covering those expenses and him covering the $4.12 each month in paypal fees? In one scenario, he is paying $104.12 to PayPal, and PayPal takes $4.12 for itself and then turns around and gives me $100; in the latter scenario, he is paying $110.55[1] to mail a money order to me, but the Post Office takes $10.55 for itself and then turns around and gives me $100. In both cases, I end up with $100 and a middle man ends up with some money of its own. What's the difference?

33.     Put simply, there is no difference, except the amount of money given to the middle man.

34.     So why is it that Jones accepts that he would be responsible for covering the $10.55 if he were to use the USPS to pay me, but not the comparatively smaller $4.12 if he used PayPal to pay me?

35.     It honestly seems like he is just trying to monkeys-paw around to try and get out of paying me the full amount, and/or to coerce me into handing over my bank account information so he can dox me. This transitions me to my next point:

<u>His refusal to accept my proposed liquidated damages</u>

<u>clause is proof that he intends to dox me.</u>

36.     I made Jones a very reasonable offer in exchange for giving him my bank account information: He agrees not to disclose that information to anyone for any reason, and agrees

---

1   $2.35 for the money order, $0.73 for the stamp, $4.85 certified mail, $2.62 return receipt, and of course, $100 for the payment itself, plus a negligible amount for the envelope.

never to use the information for any purpose other than paying me pursuant to the settlement. If he ever does either of those two things, he agrees to pay me liquidated damages of $5,000. But he only has to pay that if he ever violates either of those two things. Simple, right?

37.     Furthermore, he has already agreed to a liquidated damages clause that was twice that amount. See Dkt. 78, Page 1. So what is he afraid of?

38.     The fact that he is so adamant about refusing this liquidated damages clause is if he already knows that he is going to dox me by publishing this information online the first chance he gets. He is probably planning on doing this as a form of punishment or revenge against me, for having the unmitigated gal to sue his majesty. After all, that's literally how this all got started in the first place: He took my content and reposted it so everyone could see it without paying me, in a blatant and malicious attempt to sabotage me financially.

39.     The only justification he has offered, or even remotely hinted to, either in the pleadings in this case or even over private communication, for why he is uncomfortable agreeing to that liquidated damages clause is that he suspects I will leak my own bank account information online, say that he did it, and try to get him to pay me liquidated damages for my own conduct. See ECF 100, Page 2 ("there is nothing stopping Mr. Stebbins from making his bank information public so he can turn around and seek the damages clause immediately").

40.     But that is absurd on its face. He offers no proof that I will do that, or even that there is any reasonable likelihood that I will do that. He has shown no proof that I have ever done anything like that in the past[2], or even that I attempted to do something like that and failed. Furthermore, I'm the one who has the most to lose if my bank account information gets leaked; I'm the one who would have to deal with the onslaught of identity theft and unauthorized withdrawals. I'm the one who would have to change all my account information to stop it from happening, and if I did, I'd just have to hand *that* information over to Jones so he could continue to pay me in the new account, causing this whole cycle to begin anew.

41.     I am reminded of a clip from a YouTube video back in 2016 from a channel called WhatCulture Wrestling – www.youtube.com/clip/Ugkxk7YV8pwd2IZxQmLfrQtirPKiCjFsdryZ

---

2   Not that such proof would be admissible anyway, under FRE 404(b)(1), but at least it would justify his apprehension.

("[L]ogically, Holly had nothing to gain by [self-inflicting his own injury] because powerbombs are [expletive] dangerous, and he had by far the most to lose"). The same logic applies here, so it is absurd to suggest that I would attempt to manufacture these liquidated damages by putting my own bank information out there and just say that he did it.

42.    By contrast, I do indeed have reason to suspect that he will turn around and dox my banking information the first chance he gets if he doesn't agree to this liquidated damages clause: Because he's literally already done a very similar thing already! It's literally what I sued for in the first place: Taking m content which he had legal permission to view in the privacy of his own home, and immediately posting it online for all the world to see (thereby attempting to sabotage me financially), just because he *could*.

43.    While the settlement agreement does say that there is no admission of wrongdoing by the parties, that is mostly a formality; we all know how the case would almost certainly have ended had we not settled. That provision is only meant to distinguish itself from plea bargains in criminal cases, which usually contain express admissions of guilt by the defendant. Since these admissions carry over into many other aspects of life (including employment prospects, having a criminal record, as well as being admissible evidence in corresponding civil proceedings), these admissions typically carry quite a bit of weight. Now, if the settlement agreement contained language expressly saying that I agree that he committed no wrongdoing (rather than him simply not admitting to it), that would be admissible to preclude me from using his past actions to justify my fear that he will dox me if given the chance. But the settlement agreement doesn't say that.

44.    Therefore, his refusal to accept my reasonable terms is a red flag that he does indeed intend to dox me the first chance he gets.

"Each party will bear their own costs and fees."

45.    As I said earlier, Jones has sent me written correspondence since I sent him my last ultimatum, correspondence which I have not included since it was not an agreement to continue with the payment, and therefore, per my ultimatum, not relevant to my decision to file this motion. However, this correspondence indicates that he intends to invoke the provision of our settlement agreement that states "each party will bear their own costs and fees" in order to argue

that I already agreed to cover the PayPal fees. To nip this in the bud, I will address that argument here.

46.     First, that clause only refers to the costs and fees associated with bringing the case up to that point, e.g. filing fees, service of process fees, attorneys fees, etc.

47.     Second, even if it applies here, the clause purports on its face to only require me to bear *my own* costs and fees. So this just begs the question ... why should the $4.12 in PayPal fees be interpreted as my own costs, but the $10.55 in USPS fees mentioned earlier are his? As I explained earlier, there is no practical difference between the two, other than the total amount of money being given to the middle man.

48.     Maybe you might have a distinction if I, at any point, held $104.12 in my hand and/or my bank account, and then was expected to pay PayPal $4.12 myself in order to cover their fees. But that's not what happens. I never receive $104.12, not even for a split second; just like with the USPS example, they take their portion and then give me the remainder, not the other way around. So how can it possibly be considered "my own" costs?

49.     Therefore, the Court should hold that the PayPal fees are not my responsibility.

50.     Now, combine that with the aforementioned evidence that Jones had agreed to cover the PayPal fees previously, had acted for multiple months in accordance with that agreement, and only then decided to unilaterally back out of that previous agreement, and the Court should definitely agree that Jones is out of line for trying to unilaterally change the agreement.

### Relief Requested

51.     In light of this anticipatory breach, I ask the Court to order the Defendant to ensure, by any means necessary, that I am paid $100 per month, per the settlement agreement, and that he be responsible for any fees or costs associated with getting that money to me each month.

52.     I ask that the Court warn Jones that failure to follow this order will result in him being held in contempt of court.

**Conclusion**

53.    Wherefore, premises considered, I respectfully pray that this motion to enforce be granted.

So requested on this, the 20th day of November, 2024.

David Stebbins (pro se)

# Exhibit A

Case 8:24-cv-01486-JVS-KES        Document 106        Filed 11/20/24        Page 13 of 46        Page
ID #:309

# Re: Requests for proof of net worth

From:    Jarrod Jones (jarrod@stangranch.com)

To:      acerthorn@yahoo.com

Date:    Wednesday, September 4, 2024 at 03:08 PM
         CDT

What is your payment information so I can pay you
as ordered by the Settlement?

> On 8/23/2024 12:16 PM, Acerthorn wrote:
>
> But you're refusing to comply with my existing
> ones?
>
> On Friday, August 23, 2024 at 02:14:23 PM
> CDT, Jarrod Jones <jarrod@stangranch.com>
> wrote:
>
>
> I am not refusing to comply to reasonable and
> good faith requests.
>
> On 8/23/2024 12:12 PM, Acerthorn wrote:

# Exhibit B

# Re: Requests for proof of net worth

From:  Acerthorn (acerthorn@yahoo.com)

To:       jarrod@stangranch.com

Date:   Wednesday, September 4, 2024 at 04:49 PM CDT

Just mail the check to me.

Also, I don't know if you already knew this, but it was
supposed to be in my mailbox by tomorrow. I was
actually about to email you to ask you if it was going to
be there or if I would have to file a motion for contempt
of court.

So unless you want to order overnight shipping, it looks
like you're going to miss a payment.

> On Wednesday, September 4, 2024 at 03:08:41 PM
> CDT, Jarrod Jones <jarrod@stangranch.com> wrote:
>
>
>
> What is your payment information so I can pay you as
> ordered by the Settlement?
>
> On 8/23/2024 12:16 PM, Acerthorn wrote:

# Exhibit C

# Re: Requests for proof of net worth

From: Jarrod Jones (jarrod@stangranch.com)

To:     acerthorn@yahoo.com

Date:   Wednesday, September 4, 2024 at 04:54 PM
        CDT

Am I able to alleviate this for this month by providing
you the payment through an ACH transaction through
my bank account to yours?

> On 9/4/2024 2:49 PM, Acerthorn wrote:
>
> Just mail the check to me.
>
> Also, I don't know if you already knew this, but
> it was supposed to be in my mailbox by
> tomorrow. I was actually about to email you to
> ask you if it was going to be there or if I would
> have to file a motion for contempt of court.
>
> So unless you want to order overnight shipping,
> it looks like you're going to miss a payment.
>
> On Wednesday, September 4, 2024 at

# Exhibit D

# Re: Requests for proof of net worth

From:   Acerthorn (acerthorn@yahoo.com)

To:     jarrod@stangranch.com

Date:   Wednesday, September 4, 2024 at 05:00 PM
        CDT

---

If you do, I expect you to not disclose my bank
account information to anyone for any reason. If you
breach that non-disclosure agreement, you agree to
pay me liquidated damages of $5,000, which you
don't have to worry about if you're going to keep to
your word (which I doubt).

How's that? Do you agree to this?

> On Wednesday, September 4, 2024 at 04:54:30
> PM CDT, Jarrod Jones <jarrod@stangranch.com>
> wrote:
>
>
> Am I able to alleviate this for this month by
> providing you the payment through an ACH
> transaction through my bank account to yours?

# Exhibit E

# Re: Requests for proof of net worth

From:  Acerthorn (acerthorn@yahoo.com)

To:       jarrod@stangranch.com

Date:   Wednesday, September 4, 2024 at 04:56 PM CDT

Since it's clear that you didn't mail the check in advance, would you be willing to cover the extra fees to paypal it to me?

According to this calculator … PayPal Fee Calculator | Salecalc.com…you'd have to send $104.12 in order to ensure that I would have $100 after the paypal fees are paid.

If that's acceptable to you, let me know and I'll tell you my paypal email address.

On Wednesday, September 4, 2024 at 04:50:44 PM CDT, Acerthorn <acerthorn@yahoo.com> wrote:

# Exhibit F

# Re: Requests for proof of net worth

From:  Jarrod Jones (jarrod@stangranch.com)

To:      acerthorn@yahoo.com

Date:  Wednesday, September 4, 2024 at 04:58 PM
CDT

I don't even know how to write a check.

This is acceptable.

> On 9/4/2024 2:56 PM, Acerthorn wrote:
>
> Since it's clear that you didn't mail the check in
> advance, would you be willing to cover the extra
> fees to paypal it to me?
>
> According to this calculator … [PayPal Fee
> Calculator | Salecalc.com](…)…you'd have to send
> $104.12 in order to ensure that I would have
> $100 after the paypal fees are paid.
>
> If that's acceptable to you, let me know and I'll
> tell you my paypal email address.

# Exhibit G



# Exhibit H



**Jarrod Jones**
Oct 9 . Money Received

**+$105.00**

**Paid to**

PayPal balance                    $105.00

**Transaction ID**

3SX98724CK225240E

**Contact info**

**Message Jarrod Jones**

**Note**

Settlement

**Details**

Sent by Jarrod Jones                    $105.00

Total                    $105.00

**Refund this payment**

🖶 **Print details**

# Exhibit I

# Re: Payment

From:    Acerthorn (acerthorn@yahoo.com)

To:      jarrod@stangranch.com

Date:    Saturday, November 2, 2024 at 04:52 PM CDT

Are you going to reply to this?

> On Saturday, November 2, 2024 at 01:47:35 AM CDT, Acerthorn <acerthorn@yahoo.com> wrote:
>
> Are there going to be any problems with you paying me this month?

# Exhibit J

# Re: Payment

From: jarrod stangranch.com (jarrod@stangranch.com)

To:     acerthorn@yahoo.com

Date:   Sunday, November 3, 2024 at 04:00 PM CST

Dear Mr. Stebbins,

Thank you for your email regarding the monthly payment under our
settlement agreement.

I confirm that I will make the payment of $100 for this month as agreed.

Sincerely,

Jarrod Jones

Get Outlook for Android

**From:** Acerthorn <acerthorn@yahoo.com>
**Sent:** Saturday, November 2, 2024 2:52:40 PM
**To:** jarrod stangranch.com <jarrod@stangranch.com>
**Subject:** Re: Payment

Are you going to reply to this?

On Saturday, November 2, 2024 at 01:47:35 AM CDT, Acerthorn
<acerthorn@yahoo.com> wrote:

Are there going to be any problems with you paying me this month?

# Exhibit K



# Exhibit L

# Re: Where's the rest of it?

From:  Acerthorn (acerthorn@yahoo.com)

To:    jarrod@stangranch.com

Date:  Monday, November 4, 2024 at 01:38 AM CST

It does not resolve the issue.

When I suggested the $5,000 liquidated damages clause, you would only
have incurred that if you ended up leaking my banking information to
anyone. As long as you weren't planning on doing that, you were in the
clear. I outright stated during the mediation that you could "just mail it to
me" in order to pay me each month. It was you, not me, who wanted to
insist that I hand over my bank account information to someone who
would most likely share it online at the first opportunity, in order for me to
get paid. Mailing me the check would have been fine.

It is true that I have not complained about the use of PayPal until now. But
that's because, up until now, you've always made the full payments. You
seem to understand the legal concept that our prior actions, which were
done without objection, do indeed constitute an implied mutual
understanding, but you conveniently ignore that these prior actions were in
regards to $105 payments which converted into $100.82, not $100
payments which converted into $96.02.

Here's the bottom line: I outright asked if you are "willing to cover the
extra fees" and you outright agreed to those terms without any haggling.
You say you did not agree to cover the extra fees, but you very clearly
did. If you continue to declare this in your pleadings to the Court, I intend
to move for you to be sanctioned under FRCP 11(b)(3) (making knowingly
false assertions of fact) and/or 11(b)(4) (knowingly denying factual
contentions you know full well to be true).

I already told you that you need to send me an additional $3.98 by any
means necessary, and if that means sending via paypal, that means
sending $4.63. I have not, and will not, agree to receive any less than

$100 per month from you. Period. You have no bargaining power, since you already agreed to pay me that much, and you already agreed in writing to cover the paypal fees if you use paypal. I am under no obligation to compromise with you at this point. It's called the "pre-existing duty rule," and you can read about it here: https://www.lsd.law/define/pre-existing-duty-doctrine

I believe this email correspondence satisfies the requirement under CACD's local rules to attempt to work things out with you before filing a motion. If the deadline for the payment comes and goes without you sending me the difference, I will file a second motion for contempt of court.

On Monday, November 4, 2024 at 01:24:25 AM CST, Jarrod Jones <jarrod@stangranch.com> wrote:

Dear Mr. Stebbins,

Firstly, to clarify, this is Jarrod Jones responding directly. I am aiming to communicate in a formal and straightforward manner to address your concerns.

Regarding the continued use of PayPal, I initially offered to make payments via direct bank transfer, a straightforward method with no associated transaction fees. However, you declined this option, instead insisting on a $5,000 "damage clause" should your bank account number ever be disclosed. This demand was unreasonable and disproportionate, and as a result, I agreed to use PayPal as a compromise to meet your preferences.

Since then, you have not requested any change in payment method, nor have you raised any complaints about the use of PayPal until now. Given that there was no objection on your part previously, PayPal remains in use as the agreed payment method per your preference.

As for the additional fees you mentioned, the extra $5 paid in
September and October was sent in error. The settlement specifies
that I am to pay you $100 per month, and there was no requirement
for me to cover additional PayPal fees. Since you chose PayPal as the
payment method, any transaction fees associated with it should
reasonably be your responsibility. A bank transfer would have avoided
these fees entirely, but since you specified PayPal, the fees are an
inherent part of that choice.

Please confirm that this response resolves the issue, so we can
proceed without further complications.

Sincerely,
Jarrod Jones

On 11/3/2024 11:01 PM, Acerthorn wrote:

First of all, who am I talking to? Jarrod Jones, or some lawyer who
is assisting him? Because your cadence of speech suggests the
latter. You do realize, don't you, that it is a violation of lawyer's
ethics to represent someone without transparently disclosing that
you're representing that person?

That being said, I did not agree to that. I merely suggested paypal
as a one-time arrangement, since, by September, you hadn't yet
mailed the first check to me and it wasn't going to reach me by
September 5th. From there, it was you, not me, who continued to
use paypal through October and November. I never suggested to
you that Paypal could simply be our new standard method of
payment. That was your idea.

Furthermore, you did indeed agree to the additional fees. Attached,
you will find an email from that time period. As you can clearly see, I
outright asked you "would you be willing to cover the extra fees to
paypal it to me," even explaining that this means sending me
$104.12 to ensure I would have $100 after the paypal fees were
taken out, and your exact words were "this is acceptable."

The fact that you sent me $105 via paypal, for both September and
October, shows that you understood this, and are only just now
trying to short change me. If you are indeed consulting a lawyer for

this correspondence, I'm sure he can tell you that your past actions
clearly show that you understood you were responsible for the
paypal fees, just the same as you'd be responsible for paying for
the postage and tracking number (as well as the merchant's fees to
buy the money order in the first place) if you were to just mail it to
me.

So no, this is not acceptable. As I said earlier, I only got $96.02
from you. That means you're $3.98 short. According to the same
calculator I used last time, you will need to paypal me at least an
additional $4.63 to make up the rest.

And from now on, you need to make certain that you are legally in
the clear *before* you try to con me.


On Monday, November 4, 2024 at 12:48:10 AM CST, Jarrod Jones
<jarrod@stangranch.com> wrote:


Dear Mr. Stebbins,

In regard to your recent message about the PayPal fees, I'd like to
point out that PayPal was not originally specified in our settlement
agreement. You requested this as the payment method after the
settlement was finalized, and I agreed in good faith to accommodate
your preference. Given that this was a post-settlement adjustment
you requested, any transaction fees associated with PayPal should
be your responsibility.

Since you chose this platform and it was not part of the original
terms, requiring me to cover those fees effectively changes the
payment amount, which was not agreed upon. Thus, it's reasonable
to expect you to account for any fees that PayPal may deduct.

Please confirm that this addresses the matter to avoid any
unnecessary escalation.

Sincerely,
Jarrod Jones

On 11/3/2024 9:49 PM, Acerthorn wrote:

Jarrod, you do realize that Paypal takes a portion of the money
out to cover their own fees, right? Previously, you sent me $105
to cover those fees, but now, you sent me $100 exactly.
According to the Paypal calculator I sent you last September, that
means I'll only have $96.02 after Paypal takes its cut.

Are you going to send the rest of the payment by this Tuesday?
Or am I going to have to file *another* motion against you?

Inline image

Links in the message (1)

**PayPal Fee Calculator |
Salecalc.com**

# Exhibit M



# Exhibit N

## Re: Future payments

From:   Acerthorn (acerthorn@yahoo.com)

To:     jarrod@stangranch.com

Date:   Wednesday, November 13, 2024 at 04:00 AM CST

This is the last time I will message you in regards to this matter. If you do
not reply and affirm to me that you will ensure I receive $100 per month
once it's all said and done for the rest of the settlement, even after all
transaction and/or postage fees are covered, and without me having to
give you any additional information than what you already have, then in
one week's time, I will file a motion with the court to enforce settlement
against you, alleging an anticipatory breach: https://www.concord.app/
blog/anticipatory-breach-of-contract/

So think long and hard if you truly are prepared to die on this hill.

Even if you reply to this message, attempting to argue further, I will not
respond. I will entertain no response from you except unequivocally
affirming that you will comply fully with the settlement as outlined above.

On Wednesday, November 13, 2024 at 01:28:04 AM CST, Acerthorn
<acerthorn@yahoo.com> wrote:

I am not giving you my bank information, and I do not agree to cover
any fees. If you want to protect yourself against allegations of non-
receipt, you can get a tracking number, and perhaps even require my
signature upon delivery. I will accept nothing less than $100 in my hand
on the 5th of each month, and I am not giving you any of my
information that could be used to harm me if it is disclosed.

Remember that you already agreed to this settlement. I will not agree to any modification of the settlement terms that changes the amount I am to receive.

On Tuesday, November 12, 2024 at 06:35:41 PM CST, Jarrod Jones <jarrod@stangranch.com> wrote:


Dear Mr. Stebbins,

You're welcome to choose your preferred payment method, except for mailed checks. Checks are not secure and carry risks of being lost, stolen, or altered. There's also the possibility of claims about not receiving the check or disputes over the amount. For these reasons— and due to the additional mailing costs—checks are not an option.

If your chosen payment method involves transaction fees, please note that you'll need to cover these. As you're inferring that PayPal has transactional fees for withdrawals I have researched into it, and they offer no fees for withdrawing money from your PayPal account if you choose the less expedited method of withdrawal—I can only assume that you are willfully performing the instant withdrawal method with PayPal—I also cannot agree to a $5,000 penalty for any disclosure of your account information, especially given past attempts to claim large damages for minor delays.

I hope we can agree on a secure, straightforward payment option. Thank you for understanding.

Sincerely,
Jarrod Jones

On 11/10/2024 2:46 PM, Acerthorn wrote:

So are you going to mail it?

On Sunday, November 10, 2024 at 01:50:57 AM CST, Acerthorn <acerthorn@yahoo.com> wrote:

If you refuse to cover the paypal fees, then you can mail the check to me. I will not send you my bank information unless you agree not to share that information with anyone for any reason, under pain of a $5,000 liquidated damages clause.

On Saturday, November 9, 2024 at 05:11:36 PM CST, Jarrod Jones <jarrod@stangranch.com> wrote:

Dear Mr. Stebbins,

Thank you for your message regarding payment options. I want to clarify that, moving forward, I will only be sending the agreed-upon amount of $100 per month as outlined in our settlement agreement. The settlement agreement explicitly states that each party is responsible for their own costs and fees. As such, any additional fees associated with receiving payments via PayPal or other methods are your responsibility, as these are not covered in the settlement terms.

Once the agreed-upon amount has been sent, those funds are considered yours, and I am not obligated to cover any fees related to their receipt or withdrawal. If PayPal's fees are inconvenient, I am open to using a direct bank transfer, which should avoid any extra costs.

Please confirm how you would like to proceed.

Best regards,
Jarrod Jones

On 11/9/2024 11:22 AM, Acerthorn wrote:

From now on, will you continue to send $105 via paypal, or do you just want to mail the checks to me with a tracking number in the future?

For what it's worth, the cheapest tracking number is certified mail, and that costs $4.85, but it also costs $0.73 for a stamp as

well, which certified mail doesn't cover. So it's actually cheaper
for you, overall, to just pay the $104.12 (or $105, whichever you
prefer) via paypal anyway.