David Stebbins (pro se Plaintiff)    123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947                        acerthorn@yahoo.com

FILED
CLERK, U.S. DISTRICT COURT
NOV 26, 2024
CENTRAL DISTRICT OF CALIFORNIA
BY      PD      DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                          PLAINTIFF

VS.                         Case 8:24-cv-01486-JVS-KES

JARROD JONES                                             DEFENDANTS

**REPLY IN CONTINUED SUPPORT OF MOTION TO ENFORCE SETTLEMENT**

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Reply in Continued Support of Motion to Enforce Settlement.

**Jones is requesting additional relief that is barred by L.R. 7-3.**

1. Jones is not merely asking this Court to deny the current motion; he is actively seeking additional relief, asking the Court to order me to pay him money. He claims this was for an alleged overpayment. I'll get to the merits of this request in a minute, but first, I need to say this: Regardless of whether or not my current motion is barred by Local Rule 7-3, the Defendant's request for refund certainly is. He never once even *tried* to confer with me on whether or not I should ever owe him for any alleged repayment. Therefore, for him to bring this request to the court out of nowhere, when I had no prior notice of this requirement, necessarily precludes that relief under L.R. 7-3, regardless of whether the current motion is so barred.

Barring that, Jones is not entitled to any refunded overpayments that he willingly made.

2. Even if the relief is not barred, Jones should not be entitled to any refunded payments, even if those payments are considered "over." All three of these were given willingly. For September, he agreed to cover the extra fees. For October, he gave the extra fees entirely of his own accord, and for November, I demanded he cover the fees and then he willingly sent me an additional payment. In all three instances, he paid the extra $5 of his own accord even though I only expected him to pay $4.12.

3. Even if that was accidental (which is unproven), it's still his fault. For example, if you accidentally leave a $100 bill instead of a $10 bill as a tip for your waitress, many restaurants will attempt to return the overpayment to the customer if they catch it in time, but even that is

only a courtesy, not a legal requirement.

4.  Jones's entire basis for believing he is entitled to a refund appears[1] to be the fact that I allegedly misled him into believing that there were fees associated with the transactions when there really wasn't. However, even if his Exhibit A is both correct and dispositive of the matter at hand (which I doubt, for reasons I will discuss momentarily), he still has not shown that I should be liable to him for any alleged overpayments.

5.  First, he has not proven that any misrepresentation (if it even is true) was done *knowingly*, and when it comes to defrauding someone into parting with their money unnecessarily, *knowing* misrepresentation is generally required.

6.  Second, he would still be contributorily negligent in his failure to do this research himself before I filed the instant motion. If he had done this research back in September, he could have brought this to my attention. I would still bring up all the things I'm going to discuss in this Reply, but at least he could have absolved himself of contributory negligence.

7.  Therefore, the defendant's request for affirmative relief beyond simply denying this motion should be rejected.

## L.R. 7-3 has been complied with.

8.  Jones attempts to argue that "The Plaintiff has violated Local Rule 7-3 by failing to meet and confer in good faith before filing this motion." This is false. I very clearly did confer with him, and the email conversations I attached to the motion clearly show that.

9.  L.R. 7-3 does not require any method of conference. It states that the conference should be "preferably in person," but that is only just that: A preference, not a requirement. In-person conference is impractical in this case for obvious reasons. Therefore, email is just as valid of a means of conference as anything else.

10. In Exhibit N, I state in part the following:

    "Even if you reply to this message attempting to argue further, I will not respond. I will entertain no response from you except unequivocally affirming that you will comply fully with the settlement as outlined above."

11. The Defendant attempts to pass this off as a refusal to confer with him. This is a lie. By

---

[1] This is just a guess. I can't put my finger on it exactly.

that point, I had *already* conferred with him, and he just wasn't happy with me standing firm on my rights. That is not a refusal to confer with him; that is me communicating to him that I feel I already have.

12. Therefore, I have complied with the conference requirements.

### Jones's non-denial of my rights

13. Before we continue, it is important to note that Jones does not deny in this motion that I have the right to receive $100 from him after all fees are deducted. Therefore, according to the doctrine of qui tacet consentitur videtur, the main dispute of my original motion is now tacitly admitted to.

### Jones' Exhibit A is new evidence.

14. Jones introduces Exhibit A, a webpage which purportedly shows that there are no fees associated with this transaction. This is brand new evidence that I had not seen or even heard about before.

15. Because Jones failed to bring it up during our L.R. 7-3 conference, he should not be allowed to surprise me with it here. That's the equivalent to introducing new documents or surprise witnesses at trial that weren't previously disclosed in discovery.

### This is not a "personal" transaction. In fact, Jones's use of that process may constitute fraud.

16. Barring that, Jones alleges that he does not have to pay any PayPal fees as long as he uses the "personal" transaction option. However, he is not eligible for that option. He isn't my family, he *certainly* is not my friend, and more importantly, this isn't a non-commercial transaction. This is an out-of-court settlement. There is a clear quid pro quo: He pays this money, and I agree not to pursue the lawsuit against him. There's a clear, commercial exchange of promises and, therefore, it is not a personal transfer.

17. Moreover, the lawsuit which I agreed to dismiss was itself a commercial lawsuit. Specifically, it was copyright infringement because he had reposted a stream that I intended to profit off of. This wasn't a dispute between two neighbors over a spite fence or a dog pooping in my yard; I sued him because he tried to sabotage my business. That counts as a commercial transaction.

18. When the transaction is commercial, PayPal's fees are documented here: https://www.paypal.com/us/business/paypal-business-fees. This fee schedule clearly shows that PayPal takes 3.49% of the full amount, plus a flat fee, for "all other commercial transactions." Clicking on the "flat fee" link[2] shows that this flat fee is $0.49 when the currency is USD.

19. So not only is Jones not eligible for this feature, but if he has been using it for the past three months, there is a very good chance he has committed fraud against PayPal by portraying these payments as personal when he knows full well they aren't, thereby conning PayPal out of commercial transaction fees it would otherwise have been owed.

20. This is consistent with the calculations I made in the original motion: If Jones sends me $104.12 using the commercial transaction option, then 3.49% of that is $3.633788, rounded down to $3.63. Add a flat $0.49 to that, and we get $4.12, leaving me with $100 exactly once fees are deducted.

21. But if Jones sends me only $100, then 3.49% of that is $3.49, plus an addition $0.49 flat fees, and that comes out to a total of $3.98 in total PayPal fees, just like I explained in ECF 106.

22. I respectfully remind the court that, prior to the filing of this motion, Jones never denied any of this. Prior to his response, Jones conceded to both the propriety of these fees and the accuracy of my calculations, instead insisting that they should be my responsibility. Now, Jones is switching horses and changing his story, tacitly agreeing that the PayPal fees should indeed be his responsibility for reasons already discussed in the motion, but instead insisting that there are no fees for him to be responsible for. But as I just explained, that simply isn't true.

23. So his original defense has been abandoned by him, and his new defense is debunked. Therefore, the Court should grant this motion.

### Payments I will accept, and what I can be forced to accept.

24. I wish to preface this section by saying this: Neither the defendant, nor even the court, has the authority to unilaterally compel me to accept any payment method except for legal tender. "Legal tender" means anything that a creditor (me) must accept as payment for a debt.[3]

---

2  See https://www.paypal.com/us/business/paypal-business-fees#fixed-fees-commercialtrans
3  For the record, this doctrine does not apply to sellers of goods and providers of services who deliver said goods and provide said services immediately upon receiving payment. This is why carnivals can (and therefore often do) refuse to take money for their attractions, but instead require their customers to buy tokens that have no value

- See www.merriam-webster.com/dictionary/legal%20tender.
- See also www.investopedia.com/terms/l/legal-tender.asp ("A creditor is legally obligated to accept legal tender toward repayment of a debt").
- See also www.elibrary.imf.org/display/book/9781589061767/ch034.xml ("Legal tender is money that, if tendered by a debtor in payment of his monetary obligation, may not be refused by the creditor").

25. Technically, the creditor can refuse the payment, but the debtor is still entitled to be recognized as having discharged the debt anyway. See www.law.cornell.edu/wex/legal_tender ("Although the original creditor who is owed money is not necessarily obligated to accept the tendered payment, the specific act of tendering the payment absolves the debt").

26. In the United States, nothing but coins and paper currency are legally recognized as legal tender. See 31 USC § 5103. This means that all the other payment methods we've discussed up to this point – including checks, money orders, cashier's checks, PayPal transfers, and yes, even direct bank transfers – do not qualify as legal tender. See www.law.cornell.edu/wex/legal_tender ("Legal tender generally does not include personal checks, credit cards, or other general forms of noncash payments"). Therefore, the Court cannot compel me to accept them as payment against my will.

27. I say all of that to say this: If I really, really, *really* wanted to be an a-hole about this, I could, in theory, demand nothing less than Jarrod Jones driving all the way out here himself, walking up to my door, and personally handing me $100 in cold hard cash every single month, or at least hiring a local courier to do the same. It would be extremely bitter and spiteful of me, but strictly speaking, I would be squarely within my legal right to require that, simply because that's how "legal tender" works.

28. So when you think about it that way, the fact that I am offering literally any alternatives

---

outside of that park: Because the employees can simply refuse to trade with anyone who doesn't agree to pay in tokens, and nobody's rights are violated as a result. For example, if you don't have the $2 in tokens to buy the cotton candy, the vendor just won't give you the cotton candy, and if you don't have the $5 in tokens to ride the ride, the ride attendant just won't let you on the ride. Simple as that.

Debts, on the other hand, do not have that same "just walk away" option. Once a debtor is in debt, he's stuck paying the debt and there's no two ways about it. That is the condition which triggers the "legal tender" doctrine.

at all is generous of me.

29. That said, I am willing to accept any payment method, as long as it ...

    (a) doesn't require me to create any accounts and agree to any new terms of service I may not agree with;

    (b) ensures that I receive no less than $100 once all fees (if any) are deducted;

    (c) it is not fraudulent; and

    (d) I am legally protected from being doxxed.

30. These are very reasonable restrictions, designed simply to protect my legal rights from further sabotage or civil liability.

31. I refuse to accept PayPal's "personal transaction" option due to it being fraudulent for reasons I've already discussed. For me to accept that would make me a willing party to fraud against PayPal, exposing me to potential liability. I never agreed to PayPal's "personal transaction" opt-ion, not even last September, as evidenced by the fact that I clearly couched the September offer in language that stated that he would be responsible for the merchant's fees. Any reasonable person would instantly understand that I was referring to PayPal's "commercial transaction" opt-ion, not their personal one. Of course, even then, I clearly only made that offer on the condition that *I receive* no less than $100, regardless of how much he paid.

32. Even if I'm wrong, and even if the personal option isn't fraudulent, it doesn't matter because, as I've already discussed, I have the absolute and non-reviewable right to refuse any payment method except legal tender, and the Court can't stop me even if it wanted to. So really, the first eight words in the previous paragraph are dispositive of the matter. The Court doesn't have the authority to "[c]onfirm that payments via PayPal's 'Friend and Family' option satisfy the agreement," as the Defendant requests, because that's not legal tender.

33. Nor do I agree to a direct wire transfer[4] because there is currently no legal protection if I'm doxxed because of it. Despite my repeated assertions, Jones has offered no proof at all that he will not turn around and immediately post my banking information online for all the world to see, and his repeated refuse to accept my liquidated damages condition only further shows that

---

4 Everything in this paragraph *after* this footnote is irrelevant, and everything *before* this footnote is all the Court needs to hear, for the same reasons as those discussed in the previous paragraph.

this is indeed what he is planning on doing if given the chance.

34. This leaves mailed check/money order/cashier's check, and PayPal commercial transactions, as the only two remaining payment methods we've discussed so far. I will accept either method of payment, as long as I am not left with any less than $100 per month after all fees are deducted. Remember that these methods are not legal tender, so I have the absolute right to set whatever conditions I want for accepting them.

### Jones's attempts to brand this motion as frivolous, simply because he personally disagrees with it, is in itself frivolous.

35. Jones labels this motion as frivolous and merely an attempt to increase costs. However, he offers no evidence of this, except the fact that he disagrees with it.

36. He cites my alleged "pattern of inflating claims and seeking to impose additional costs," as well as my alleged "history of attempts to extract additional money," but he makes no showing whatsoever of exactly what prior actions fall within that category. This is nothing but making baseless accusations, which he ironically criticizes me for allegedly doing against him! "Rules for thee but not for me" is apparently Jarrod Jones's life motto.

### The defendant's proposals are not reasonable, and my proposals are not unreasonable, for reasons I've already stated.

37. The defendant asks the court to "[a]cknowledge that the Defendant's refusal to use insecure methods, such as mailed checks or money orders, is reasonable and justified."

38. First of all, as I explained earlier, it's not a question of whether a certain payment method is "reasonable" or not; it's a question of whether the defendant and/or Court can unilaterally compel me to accept it whether I want to or not. These methods are not legal tender, so I cannot be compelled accept it. Whether it's "reasonable" or not is irrelevant. He argues that the fact that I have "consistently rejected reasonable and secure alternatives" is proof of bad faith? Well, those alternatives are not legal tender, so it doesn't matter. The only thing the Court can unilaterally compel me to accept is the one method that is by far the most objectively unreasonable of them all from Jones's point of view: Handing me cash in-person.

39. But even barring that, I still disagree that mailing a [cashier's] check or money order to

me is unreasonable. The defendant cites several alleged concerns over how supposedly "insecure" these methods are, but each concern he raises, I've already addressed them in the motion and explained how there are options to protect himself from them. He acknowledges none of these options.

    (a)    "Risk of Theft or Loss" – He can just get a tracking number for the mailing.

    (b)    I "may deny receipt" – He can just get a return receipt.

    (c)    "[P]otential for the Plaintiff to modify or alter a check" and I may "dispute the payment amounts" – He can just get a money order or cashier's check, so a disinterested third party can verify the amount if it's disputed.

40.     I brought up all of these options in the motion, but in his response, Jones proceeded to ignore all of them and just declare the prospect of mailing a [cashier's'] check or money order to me as unreasonable *just cuz*.

41.     He also insists that a direct bank transfer is "reasonable and secure," but he completely ignores the legitimate concerns I raised about him posting my bank information online for all the world to see. Again, he never actually addresses that legitimate concern. He only claims that the $5,000 liquidated damages clause I requested was "extortionate," but he never explains just how they are extortionate. The only way he would be liable for those liquidated damages is if he doxxes my bank information. He is in complete control in this regard. So how is it extortionate? Because he says so; that's why!

42.     Clearly, it is he, not I, who is being unreasonable (to the extent that even matters and isn't foreclosed by the "legal tender" doctrine), because if he were reasonable, he would have at least *attempted* to address all of these concerns, just as I have *attempted* to address his but he ignored that.

## Conclusion

43. I tried being reasonable, but Jones is going to accuse me of being unreasonable at every turn, no matter what I try to do. I didn't want to invoke the "legal tender" doctrine and give the ultimatum that I could simply require him to bring me cash in person at great personal expense, and he'd have no choice but to accept. But Jones kept pushing my buttons, so here we are now.

44. Wherefore, premises considered, I respectfully pray that the Motion to Compel Enforcement be granted, and that the Defendant be ordered to ensure, by any means necessary, that I am paid $100 per month pursuant to the settlement agreement, either by delivering cash to me personally or by any other method that I voluntarily agree to, conditions and all.

So requested on this, the 26th day of November, 2024.

/s/ David Stebbins
David Stebbins (pro se)