FILED
CLERK, U.S. DISTRICT COURT
06/24/2025
CENTRAL DISTRICT OF CALIFORNIA
BY      DVE      DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

David Stebbins (pro se Plaintiff)  123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947  acerthorn@yahoo.com

UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                      PLAINTIFF

VS.                             Case 8:24-cv-01486-JVS-KES

JARROD JONES                                                        DEFENDANTS

### RESPONSE IN OPPOSITION TO MOTION TO SUSPEND SETTLEMENT

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Response in Opposition to Motion to Suspend Settlement in the above-styled action.

**The motion is improvidently filed in violation of Local Rule 7-3.**

1. This motion is procedurally improper because Jones never made any effort to confer with me before filing the motion, as is required by Local Rule 7-3. This Court, in this very case, has repeatedly denied motions just on this reason alone. See ECF 97 as just one example.

2. This is especially ironic in this case, because the Defendant, in his Response to my Motion to Enforce Settlement, he complains that my motion is procedurally improper because I supposedly didn't confer with him! So he obviously is aware of this requirement! In that case, I *tried* to confer with him and he didn't respond. Here, he didn't even *try* to confer with me, so why does he feel entitled to file this motion? Does he genuinely believe that the rules don't apply to him?

3. Just on this reason alone, the Court should deny his motion, if only without prejudice.

**The Defendant is probably lying about losing his job, the amount of his rent, and/or his current search for employment.**

4. In ECF 129, Page 7, I attached an email where Jones acknowledged the possibility that he may file a motion to suspend settlement payments "in the event [he]'s lost [his] job." Jones does not dispute the authenticity or accuracy of this exhibit. Well, now, he is alleging precisely that: That he's lost his job.

5. Bear in mind that, in his email (which, again, he does not contest the accuracy of), he speaks of losing his job as a hypothetical scenario that might prompt him to file this motion, as

-1-

evidenced by the words "in the event." But it's clear from any reasonable reading of that text that it's not something that has happened yet. Then, only a few days later, he suddenly decides to file that motion, claiming that this very thing he had previously suggested, originally as a hypothetical, now actually happened for real, only a few short days after he had spitballed it! What are the odds?!

6.      What's next? If my neighbors overhear me screaming at my wife, saying I wish she would just die and leave me in peace, and then, a few days later, her *actual* dead body is found in a ditch about 2 miles from my home, that's not the least bit suspicious either?! There's absolutely no reason to think I might have anything at all to do with her death?! Not even so much as a police investigation should be launched?!

7.      Logic and common sense dictates that it is far, far more likely that he either...

(a)     Had been entertaining thoughts of filing this motion for quite some time now. At the time that he sent me the email mentioned above, he was still on the fence about whether or not to pull the trigger on it, hence why he couched it as a hypothetical scenario, but by the time he filed his concurrent motion, he had finally decided to go for it. In other words, he is out and out *lying* about losing his job.

OR...

(b)     He was already being investigated by his employer and considered for termination, which is how he got the idea that he might lose his job before it actually happened, and only a few days after he sent me that email, the company finally returned their decision, that he was indeed fired.

8.      If the first one is true, then the Court absolutely should throw the book at him, grant my motion to enforce, deny his motion to pause, and even issue sanctions against him for lying.

9.      If the second scenario is true, then the Court should inquire into the circumstances surrounding his termination. After all, whether and to what extent he is at fault for his own termination should have a monumental influence on the amount of sympathy the Court gives to him. Was he fired because he was caught embezzling company funds, or because of sexual harassment complaints from a female coworker? If so, then the Court should afford him no

sympathy for his current financial hardships, as he 100% deserves them.

10. This is all the more reason why Jones's complete failure to provide any evidence of his losing his job – or even provide any details to substantiate it – are such a red flag in this case, one that the Court should investigate.

11. The fact that Jones fails to offer any proof that he has lost his job, or even any details about how it happened, is alarming to say the least. That, combined with the fact that his previous email to me indicated that it was something he was thinking about but which hadn't yet happened, is suspicious to say the least.

12. The Court should order the Defendant to do both of the following:

    (a) Show proof that he was indeed fired from his job, after June 11, 2025 (when he sent that email to me) but on or before June 20, 2025 (when he filed his motion), and

    (b) Describe in detail the circumstances of the termination, as well as *provide evidence*[1] to prove these details, showing whether and to what extent the termination was his fault.

13. If he cannot do both, then, in addition to his motion to pause being denied, he should be made to show cause why he should not be fined $1,500 for lying to the Court, just like it has ordered me to do by no later than July 31, 2025.

**The relief requested is palpably beyond the Court's authority.**

14. The defendant asks the Court to grant him something extraordinary: That he be allowed to simply ignore the settlement until he gets another job. This is palpably beyond the Court's authority. The Court does not have the power to suspend, however briefly, the operation of a contract between two parties without the consent of both parties. There is no precedent for this.

15. As I explained in the motion to enforce settlement (ECF 129), the mere fact that a debtor loses his job does not, in the eyes of the law, give him permission to not fulfill his contractual duties. If the debtor takes out a car loan, signs up for a 2-year cell phone service agreement, or engages in any other obligation to pay money on a regular basis, and then loses his job, as I previously explained in that motion, that's the debtor's problem, not the creditor's.

16. By that same logic, why doesn't he file a motion in the Los Angeles County Superior Court against his landlord seeking to pause the payment of his rent, alleging the same financial

---

[1] I cannot stress this enough: He needs to show *evidence!* EVIDENCE! ***EVIDENCE!!!***

hardships he's alleging here, and ask that his landlord not be allowed to evict him during the pause, and see how far he gets with that?! In fact, if he genuinely believes he is legally entitled to this relief, it makes far more sense for him to seek that relief against his landlord, because that would grant him ten times the financial relief that he would get against me (assuming he isn't out and out lying about having to pay $1,000/mo in rent). The only explanation for why he isn't going that route is because he knows that, if he does, the judge would laugh him out of the court.

17. The case law citations the Defendant provides fail to support this position that the Court has discretion to do this:

   (a) A&A Sign Company v. Maughan, 419 F. 2d 1152 (9th Cir. 1969) is inapposite because...

      i. The stipulation within the settlement was set aside in its entirety, not simply temporarily paused. There is no precedent (certainly none offered by the defendant) suggesting that the Court even has the power to do the latter even if it wanted to.

      ii. The remedy provided by the district court was one of reformation. I referenced this equitable rule in my Motion to Enforce Settlement, where I asserted that it was wholly inapplicable to the instant case. See ECF 129, ¶ 6. However, as the A&A court explains, "[r]eformation is an appropriate remedy to correct a written instrument when the words it contains do not express the meaning the parties agreed upon; it is not a proper remedy for the enforcement of terms to which the parties had not agreed." See id at 1156. Therefore, because I have not agreed to this pause (and, in fact, this motion is being filed specifically to attempt to circumvent my lack of consent), the defendant's own case law citation states that the Court does not have the power to grant the requested relief.

      iii. The one part of this case that is apposite to the instant case is the fact that that the district court's reformation order was overturned for want of evidence supporting the underlying factual findings. See id at 1156 ("The court's order could have been sustained had there been findings supported by substantial evidence warranting reformation of the stipulation"). Therefore, since the defendant in the instant case fails to provide any evidence that (A) he was indeed fired from his job, (B) the termination was not his fault,

(C) he owes $1,000 per month in rent, or (D) that he is indeed actively seeking new employment, the Court must likewise deny relief for want of evidence.

(b)    Keeling v. Sheet Metal Workers International Association, 937 F. 2d 408 (9th Cir. 1991) is inapposite because...

    i.    The settlement agreement was set aside in its entirety, pursuant to Fed.R.Civ.P. 60(b), resulting in "restoration of the case to the civil active list" (see id at 410), something which the defendant has expressly said he *doesn't* want in this case. The Court does not have the power to temporarily stay execution of settlement payments.

    ii.    The *reason* it was set aside was because "the settlement agreement had been the product of fraud... compliance with the settlement agreement was contingent upon the bankruptcy court's approval... The record showed little if any effort on the part of Jim Keeling to obtain that approval... The court held that Keeling's actions before the bankruptcy court, along with the history of the Keelings' consistent noncompliance, had completely frustrated the purpose of the settlement agreement." See id at 410. By contrast, the defendant has not alleged any wrongdoing on my end that lead to his purported inability to make the payments.

(c)    Phelps v. Alameida, 569 F. 3d 1120 (9th Cir. 2009) is inapposite because...

    i.    Once again, it dealt with vacating judgments in their entirety under Rule 60(b), not temporarily suspending settlement payments. The Defendant still fails to provide any precedent granting the Court discretion to award this relief without my consent.

    ii.    While it does acknowledge that federal courts do indeed have a "grand reservoir of equitable power" in post-judgment proceedings, it also cautioned district courts to use that power sparingly, emphasizing "the strong public interest in the timeliness and finality of judgments" and advising district courts that relief under Rule 60(b) "requires a showing of extraordinary circumstances." See id at 1135. Here, the defendant has alleged no extraordinary circumstances. He supposedly lost his job (although even that is unproven). Big deal. That happens to people literally every day. It is the very definition of an ordinary occurrence, not an extraordinary one.

 (d) Flores v. Rosen, 984 F. 3d 720 (9th Cir. 2020) is inapposite because...

  i. Once again, the case deals with vacating a settlement agreement in its entirety, not temporarily suspending settlement payments at the expense of the creditor, which the Court does not have the power to do.

  ii. The settlement agreement was terminated, not because changes in the debtor's employment or other financial status made them unable to comply, but because changes in *legal regulations* rendered the settlement agreement no longer enforceable as a matter of public policy. By contrast, it is well established, black letter law that a debtor is not relieved of his debt obligations simply because he lost his job.

 (e) Even Williams v. Walker-Thomas Furniture Company, 350 F. 2d 445 (DC Cir. 1965), the one case cited by the defendant where the contract was set aside in part due to the movant's inability to afford the contract, is still inapposite because...

  i. Once again, the remedy was that the contract was rendered wholly unenforceable in its entirety, not simply a temporary pause on payments, which is not something the Court has the power to impose without my consent.

  ii. The unconscionability was found based on facts that were known to both parties at the time of the purchase. See id at 448 ("at the time of this and the preceding purchases, appellee was aware of appellant's financial position"), whereas here, the defendant is asking the Court to find unconscionability based on new facts which have supposedly (though he offers no proof) came into existence after the settlement was agreed to.

  iii. In Williams, the defendant was found to have knowingly and inequitably exploited the plaintiff's financial position in a malicious attempt to debt-trap her. See id at 448 ("[W]ith full knowledge that appellant had to feed, clothe and support both herself and seven children on [$2181 per month], appellee sold her a $5141 stereo set... We think Congress should consider corrective legislation to protect the public from such exploitive contracts as were utilized in the case at bar"). But in the instant case, the defendant does not allege that the supposed "hardships" (if they even are real) were caused, or even exacerbated, by my direct, exploitative actions. Even if he did allege that,

he'd probably still offer zero evidence to support his allegations anyway, because that's just what the defendant does.

18.     All of these cases taken together show a clear pattern regarding the law: In order to obtain any relief (including modification) of a judgment or settlement, the movant typically needs to show that the nonmovant has engaged in some sort of inequitable behavior. Fraud, lack of diligence in obtaining a bankruptcy court's approval, or perhaps maliciously exploiting a party's financial position in order to debt-trap them. These are all things that make the nonmovant personally culpable in the circumstances which lead to the movants seeking relief in the first place. Here, Jarrod Jones has shown nothing of the sort. The closest he comes to showing allegedly inequitable conduct on my part is my language and demeanor when messaging him about the late payments. But no matter how detestable those actions may be, those actions did not directly cause the predicaments which Jones says requires this relief.

**The defendant may probably renew this motion in 3 months, and again in 6 months, and again and again and again.**

19.     Owing to the fact that the defendant has offered no proof whatsoever that he has lost his job or that he is actively seeking employment, and especially when juxtaposing this complete lack of evidence with the fact that he previously speculated that he *could* lose his job followed only a few days later with his confident declaration that he *had* lost it, for reasons discussed above, heavily imply that he's just made this whole thing up to try and give himself an excuse to not pay me anymore.

20.     This is further corroborated by his request that, after 60 days, he should have to give a revised account of his employment status. Clearly, he intends to seek renewal of the pause if, after 60 days, he still hasn't found a job. Otherwise, what purpose would such a bi-monthly report serve?

21.     So, imagine if this relief is granted, and then after 60 days, he tells the court "Welp... I'm still looking for a job... I promise I'm trying! Pinky swear! But I just need more time! This is totally not bad faith and all!" And he provides precisely as much evidence then as he does now in support of his declaration that he is "actively seeking employment," which is to say... none at all.

22. So what was supposed to just be a three month pause suddenly turns into six months. Then six months turns into nine. Nine months turns into two years. And it just keeps going.

23. If for no other reason than to ensure that this manifest absurdity doesn't happen, the Court should deny the defendant's already ludicrous request for a pause.

## Conclusion

24. Wherefore, premises considered, I respectfully pray that the motion to pause be denied, and that the Court consider investigating whether the defendant is telling the truth about his alleged financial hardship and consider sanctioning him accordingly, and for any other relief to which I may be entitled.

So requested on this, the 24th day of June, 2025.

_David Stebbins_ (pro se)