FILED
CLERK, U.S. DISTRICT COURT
06/24/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: DVE DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

David Stebbins (pro se Plaintiff)    123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947    acerthorn@yahoo.com

UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

DAVID STEBBINS,      PLAINTIFF

VS.      Case 8:24-cv-01486-JVS-KES

JARROD JONES      DEFENDANTS

### REPLY IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Reply in Support of Motion to Enforce Settlement in the above-styled action.

**This motion is not procedurally deficient, but the Defendant's concurrent motion certainly is.**

1. The Defendant says that my motion si procedurally deficient, owing to my alleged failure to confer with him regarding the motion before filing it. This is false. By Jones's own admission, I did indeed email him and attempt to confer with him regarding the propriety of the motion, but <u>he never responded</u>!

2. Go back and re-read those last three underlined words. Those are very important. By his own admission, I extended an offer to engage in discussion, and he didn't take it. Now, he's complaining that I didn't fulfill my obligations under Rule 7-3 when, in fact, it is he who prevented me from fulfilling those obligations.

3. If the defendant got his way here, he could effectively pocket veto any motion I make against him through the simple expedient of not participating in the discussion. What's next? If we actually *schedule* a live webcam discussion, but then he just doesn't show up for it, am I still not allowed to file the motion because I didn't confer with him first?

4. His total lack of response to my invitation to try and talk it out should be treated by the Court as a waiver of his right to pre-filing discussions, and my motion should be considered procedurally proper accordingly. This is the only way to avoid the manifestly absurd scenario described above.

5.      By contrast, Jones is now filing his own motion, which is absolutely procedurally deficient. He didn't even try to confer with me before filing this motion, nor has he even alleged in the motion itself that he has so conferred, as is required by Local Rule 7-3. So, even according to his very own logic, his motion is procedurally deficient.

**The Defendant offers no proof of losing his job, or the circumstances surrounding said termination, or of his rent, or his quest to find a new job.**

6.      The defendant *claims* three things: (1) He lost his job, (2) he is "actively seeking" new employment, and (3) he has to pay approximately $1,000 per month as his share in rent. However, at no point does he offer any proof of any of these claims.

7.      Of all three of these claims, the one about rent should be the easiest to show evidence for. Rent contracts are almost always governed by the statute of frauds, which means there should be a clear written instrument he could produce a copy of to substantiate his claim. But he doesn't.

8.      District Court decisions have been overturned on appeal for precisely this reason. For example, in A&A Sign Company v. Maughan, 419 F. 2d 1152 (9th Cir. 1969) (which Jones himself even cites in his concurrent motion in dubious support of his position), the Court of Appeals overturned an order of reformation for want of evidence, claiming that "[t]he court's order could have been sustained had there been findings supported by substantial evidence warranting reformation of the stipulation." See id at 1159.

9.      So because the Defendant offers no proof of these three claims, the Court must disregard these factual contentions.

**Jones is most likely either (A) lying about losing his job, or (B) it was his fault for losing it, at which point, he deserves no sympathy from me or the Court anyway.**

10.     In ECF 129, Page 7, I attached an email where Jones acknowledged the possibility that he may file a motion to suspend settlement payments "in the event" he lost his job." Jones does not dispute the authenticity or accuracy of this exhibit. Well, now, he is alleging precisely that: That he's lost his job.

11.     Bear in mind that, in his email (which, again, he does not contest the accuracy of), he speaks of losing his job as a hypothetical scenario that might prompt him to file this motion, as

evidenced by the words "in the event." But it's clear, from any reasonable reading of that text, that it's not something that has happened yet. Then, only a few days later, he suddenly decides to file that motion, claiming that this very thing he had previously suggested, originally as a hypothetical, now actually happened for real, only a few short days after he had spitballed it! What are the odds?!

12.     What's next? If my neighbors overhear me screaming at my wife, saying I wish she would just die and leave me in peace, and then, a few days later, her *actual* dead body is found in a ditch about 2 miles from my home, that's not the least bit suspicious either?! There's absolutely no reason to think I might have anything at all to do with her death?! Not even so much as a police investigation should be launched?!

13.     Logic and common sense dictates that it is far, far more likely that he either...

(a)     Had been entertaining thoughts of filing this motion for quite some time now. At the time that he sent me the email mentioned above, he was still on the fence about whether or not to pull the trigger on this scheme, hence why he couched it as a hypothetical scenario, but by the time he filed his concurrent motion, he had finally decided to go for it. In other words, he is out and out *lying* about losing his job.

OR...

(b)     He was already being investigated by his employer and considered for termination, which is how he got the idea that he might lose his job before it actually happened, and only a few days after he sent me that email, the company finally returned their decision, that he was indeed fired.

14.     If the first one is true, then the Court absolutely should throw the book at him, grant my motion, deny his concurrent motion, and even issue sanctions against him for lying in the manner I'm about to describe in the next section. If the second scenario is true, then the Court should inquire into the circumstances surrounding his termination. After all, whether and to what extent he is at fault for his own termination should have a monumental influence on the amount of sympathy the Court gives to him. Was he fired because he was caught embezzling company funds, or because of sexual harassment complaints from a female coworker? If so, then the Court


evidenced by the words "in the event." But it's clear, from any reasonable reading of that text, that it's not something that has happened yet. Then, only a few days later, he suddenly decides to file that motion, claiming that this very thing he had previously suggested, originally as a hypothetical, now actually happened for real, only a few short days after he had spitballed it! What are the odds?!

12.     What's next? If my neighbors overhear me screaming at my wife, saying I wish she would just die and leave me in peace, and then, a few days later, her *actual* dead body is found in a ditch about 2 miles from my home, that's not the least bit suspicious either?! There's absolutely no reason to think I might have anything at all to do with her death?! Not even so much as a police investigation should be launched?!

13.     Logic and common sense dictates that it is far, far more likely that he either...

(a)     Had been entertaining thoughts of filing this motion for quite some time now. At the time that he sent me the email mentioned above, he was still on the fence about whether or not to pull the trigger on this scheme, hence why he couched it as a hypothetical scenario, but by the time he filed his concurrent motion, he had finally decided to go for it. In other words, he is out and out *lying* about losing his job.

OR...

(b)     He was already being investigated by his employer and considered for termination, which is how he got the idea that he might lose his job before it actually happened, and only a few days after he sent me that email, the company finally returned their decision, that he was indeed fired.

14.     If the first one is true, then the Court absolutely should throw the book at him, grant my motion, deny his concurrent motion, and even issue sanctions against him for lying in the manner I'm about to describe in the next section. If the second scenario is true, then the Court should inquire into the circumstances surrounding his termination. After all, whether and to what extent he is at fault for his own termination should have a monumental influence on the amount of sympathy the Court gives to him. Was he fired because he was caught embezzling company funds, or because of sexual harassment complaints from a female coworker? If so, then the Court

should afford him no sympathy for his current financial hardships, as he 100% deserves them.

15.   This is all the more reason why Jones's complete failure to provide any evidence of his losing his job – or even any details about it – are such a red flag in this case, one that the Court should investigate.

**The Court should demand that Jones show proof of his termination or else face a $1,500 fine just like it's ordered me to show cause on.**

16.   As I've alluded to earlier, the fact that Jones fails to offer any proof that he has lost his job, or even any details about how it happened, is alarming to say the least. That, combined with the fact that his previous email to me indicated that it was something he was thinking about but which hadn't yet happened, is suspicious to say the least.

17.   The Court should order the Defendant to do both of the following:

(a)   Show proof that he was indeed fired from his job, after June 11, 2025 (when he sent that email to me) but on or before June 20, 2025 (when he filed his motion), and

(b)   Describe in detail the circumstances surrounding the termination, as well as *provide evidence*[1] to prove these details, showing whether and to what extent the termination was his fault.

18.   If he cannot do both, then he should be made to show cause why he should not be fined $1,500 for lying to the Court, just like it has ordered me to do by no later than July 31, 2025.

**I am not required to accommodate his financial hardship, and certainly not required to give up my right to be paid just because of every little inconvenience he encounters.**

19.   In his Response, Jones complains about my alleged "unwillingness to accommodate reasonable hardships." By "unwilling to accommodate," what he actually means is... I'm not willing to give up my contractual rights over *alleged* hardships which he *claims* to be experiencing but fails to provide even one iota of proof in support for.

20.   He cites to no legal authority stating that I am required to forgive noncompliance with his contractual terms under these circumstances. His citation of Williams v. Walker-Thomas is not binding precedent since it does not come from the 9th Circuit, and above all is distinguishable for what should be obvious reasons. Since the defendant apparently needs it spelled out for him, here

---

1   I cannot stress this enough: He needs to show *evidence!* EVIDENCE! ***EVIDENCE!!!***

is a chart listing just a few of the major differences between that case and this one:

| **Williams v. Walker-Thomas** | **The instant case** |
|---|---|
| The unconscionability was found based on facts that were known to both parties at the time of the purchase. See id at 448 ("at the time of this and the preceding purchases, appellee was aware of appellant's financial position"). | The defendant is asking the Court to find unconscionability based on new facts which have *supposedly* (though he offers no proof) came into existence after the settlement was agreed to. |
| The defendant was found to have knowingly and inequitably *exploited* the plaintiff's financial position in a malicious attempt to debt-trap her. See id at 448 ("[W]ith full knowledge that appellant had to feed, clothe and support both herself and seven children on [$218[2] per month], appellee sold her a $514[1] stereo set... We think Congress should consider corrective legislation to protect the public from such exploitive contracts as were utilized in the case at bar"). | The defendant does not allege that the supposed "hardships" (if they even are real) were caused, or even exacerbated, by my direct, exploitative actions. Even if he did allege that, he'd probably still offer zero evidence to support his allegations anyway, because that's just what the defendant does. |
| The Court declined to enforce the contract altogether. This was a *permanent* remedy for the Plaintiff. | The defendant here *claims* that he still intends to honor the contract, but is only requesting temporarily relief. He explicitly states in his response that he "is not seeking to void the settlement." Instead, he seeks a unilateral modification to his contractual duties. Yet, according to the case of A&A Sign, supra, the Court lacks authority to do that. See id at 1156 ("Reformation is an appropriate remedy to correct a written instrument when the words it contains do not express the meaning the parties agreed upon; it is not a proper remedy for the enforcement of terms to which the parties had not agreed"). |

21.   Therefore, his citation of Williams v. Walker-Thomas should be rejected.

22.   As I explained in the motion, the mere fact that a debtor loses his job does not, in the eyes of the law, give him permission to not fulfill his contractual duties. If the debtor takes out a car

---

[2]   In 1965, when that case was published, $218 and $514 had the buying power of approximately $2,200 and $5,200 in today's money, according to https://www.bls.gov/data/inflation_calculator.htm.

loan, signs up for a 2-year cell phone service agreement, or engages in any other obligation to pay money on a regular basis, and then loses his job, as I previously explained in the motion, that's the debtor's problem, not the creditor's.

23.    By that same logic, why doesn't he file a motion in the Los Angeles County Superior Court against his *landlord* seeking to pause the payment of his rent, alleging the same financial hardships he's alleging here, and ask that his landlord not be allowed to evict him during the pause, and see how far he gets with that?! In fact, if he genuinely believes he is legally entitled to this relief, it makes far more sense for him to seek that relief against his landlord, because that would grant him ten times the financial relief that he would get against me (assuming he isn't out and out lying about having to pay $1,000/mo in rent). The only explanation for why he isn't going that route is because he knows that, if he does, the judge would laugh him out of the court.

24.    And I ask that the Court declare that here and make it clear to Jones.

### The matter is not moot and there is indeed still controversy.

25.    Jones argues that the matter is now moot because he has made the belated payment. This is false. While it is true that this one payment was ultimately made, it was still late, and the defendant expresses no remorse or contrition over his flagrant disregard of his contractual duties. He has given me no reason to believe that this won't happen again. To the contrary, at the time I filed the motion, he made it explicitly clear, in ECF 129 Exhibit B, that it very well could happen again if he, in his arbitrary discretion, felt he had enough "financial hardships" to justify it. In other words, whenever he feels like it.

26.    All of this was *before* he filed his concurrent motion to suspend payments, the filing of which only confirmed that my concerns were valid.

27.    In addition, lest we forget that this is not the second time he has missed a payment, but the third time, as I demonstrated in the Motion. There is a clear pattern of this behavior.

28.    Therefore, for all of these reasons, I am well within my right to take the proactive step and file a motion asking for the Court to order that this not happen again. He's made it clear that he has no intention of ceasing this pattern of behavior unless he is forced to, so I am absolutely justified in asking the Court to make him cease.

**Alleged futility of requring that I agree in writing to a delay.**

29.     In his revised Opposition (ECF 134), Jones added a new argument, that my proposed restriction that I must agree in writing to a delay in payment before the payment is otherwise due is unreasonable. His grounds for claiming that it is unreasonable is because I supposedly am "categorically unwilling to entertain any delay, even in genuine cases of emergency or financial hardship."

30.     First of all, even if that is true (which I'll address momentarily), it still doesn't matter. Even if I don't agree to a delay, even if he believes it is objectively justified, ***that's my right!*** The whole point of this motion is to emphasize that Jones ***is not entitled*** to any delays as a matter of right, and stamping out this belief of his that he is entitled to not pay me under certain conditions is precisely the relief I'm requesting in this motion. He thinks I'm being unreasonable in refusing to accommodate his dilemmas that he hasn't even proven?! Well, cry me a river.

31.     Second, his conclusions simply aren't true. He hasn't actually attempted in good faith to seek my approval for any delays. He's usually just failed to make the payments on time and then only made up an excuse after I already complained. For the month of October 2024, he didn't contact me in advance about the alleged hold on his bank account and attempted to work something out with me; he just out and out failed to make the payment. As I explained in ECF 99, ¶ 11, "he could (and should) have gotten in touch with me to notify me of these problems," but he didn't. Meanwhile, in the month of June 2025, he didn't reach out to me beforehand and ask for a brief extension of time to make the payment for that month; he just did it.

32.     This complete failure on his end to even *attempt* to work things out with me amicably naturally put me in a bad mood when dealing with him, and made me far less willing to compromise than if he had done things correctly from the outset.

33.     Barring that, why doesn't he do something to encourage me to agree? Like, oh I don't know, *offer me something* to make it worth my while?! Why doesn't he open the discussions with something to the tune of "If you agree to let me skip this month's payment, I'll pay you $250 next month. That's both month's payment *plus* an extra $50 to make up for the delay." Not necessarily that specific offer, but something that makes it clear that he's actually trying in good faith, and

isn't just expecting me to unconditionally agree to a delay in payments while getting nothing out of it. He seems to think he is *entitled* to the latter treatment, but quashing that sense of entitlement is precisely the point of this motion.

## Conclusion

34.     Wherefore, premises considered, I respectfully pray that the Motion to Enforce Settlement be granted, that the motion to pause the settlement be denied, that the Court consider investigating whether the defendant is telling the truth about his alleged financial hardship and consider sanctioning him accordingly, and for any other relief to which I may be entitled.

So submitted on this, the 24th day of June, 2025.

                                                      David Stebbins (pro se)